GAY et al. v. HUDSON RIVER ELECTRIC POWER CO. et al.

SAME v. HUDSON RIVER ELECTRIC POWER CO.

(Circuit Court of Appeals, Second Circuit. April 21, 1911.)

No. 222.

1. CORPORATIONS (§ 547*)—POWERS—DISPOSITION OF PROPERTY—RIGHTS OF CREDITORS.

A corporation generally has the right to hold and dispose of its assets, subject only to the right of the state and of its stockholders to insist that it keep within the powers conferred by its charter, and a creditor cannot come into a court of equity, and enjoin it from making a contract or conveyance, nor, where the court is winding up its affairs, object to a transfer of a portion of the corporate assets, consummated long before the receivership, merely on the ground that in making such transfer or conveyance it exceeded its charter powers; but in either case he must show as a ground for such relief some fraud or breach of trust as against him.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 547.*]

2. CORPORATIONS (§ 370*)—POWERS—SUBSIDIARY CORPORATIONS.

The officers of a subsidiary corporation are not acting beyond its powers when they agree that credits which exist upon its books only through the action of the corporation which manages its affairs may be offset against the debts of such managing corporation.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 370.*]

Appeal from the Circuit Court of the United States for the Northern District of New York.

Suit in equity by Eben H. Gay and Joseph W. Jackson against the Hudson River Electric Power Company and others and against the company alone. The New England Trust Company and the Guaranty Trust Company of New York, creditors of defendant company, appeal from an order approving an agreement of settlement between the receivers and the General Electric Company. Affirmed.

The order of the Circuit Court approved an agreement of settlement between the General Electric Company and the receivers of corporations called the Hudson River Companies. The appellants are creditors of one of these corporations—the Hudson River Electric Company. The facts thought necessary to be considered in connection

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

with the controlling questions of law in the case are stated in the opinion.[1]

Winthrop & Stimson (Franklin H. Mills and Albert W. Putnam, of counsel), for Guaranty Trust Co.

Tyler & Young (B. E. Eames, Charles H. Tyler, Owen D. Young, and Robert A. Pritchard, of counsel), for New England Trust Co.

George B. Curtiss and A. J. Rose, for receivers.

James O. Carr and Lewis E. Carr, for General Electric Co.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge. The record presents a case of eight associated corporations, of which one was a managing and controlling company. Some corporations generated electricity, and others transmitted it. Some sold electrical power, and others used it in various ways. Still others delivered and sold electric light. Practically there was one enterprise, with different departments. The business of all of the corporations was transacted through the managing company. All receipts were deposited to its credit, although bookkeeping entries were made crediting them to different companies. So the several corporations were charged on the books with disbursements made by the managing company for their respective accounts.

The managing corporation was the Hudson River Electric Power Company, and the subsidiary corporation under consideration in this case was the Hudson River Electric Company. The latter corporation was a distributing company, and it never owned any station for the generation of electrical power.

The Hudson River Electric Company with two other subsidiary companies, entered into a contract with the General Electric Company under which they agreed to furnish power to that corporation. The agreement provided that payment for such power should be made to the Hudson River Electric Company. Penalties were prescribed for the failure of the vendors to deliver power according to the agreement. Under this agreement electrical power amounting to upwards of $200,000 was furnished to the General Electrical Company, which was never paid for, except by way of the set-off to which we shall refer.

The General Electric Company sold to the managing company—the Hudson River Electric Power Company—merchandise to an amount approximating the amount which it owed for the power purchased. A portion of this merchandise was used for the benefit of the Hudson River Electric Company.

---

[1] The situation disclosed by the record in this case is a complicated one. Even a summary of the facts would require an extended statement. But such a statement is thought unnecessary for the proper presentation of the legal questions upon which the determination of the case depends. Consequently only such facts as are essential to an understanding of those questions are stated in the opinion, and resort must be had to the record for the terms of the agreements between the different parties, the details of the accounts between the General Electric Company and the Hudson River Companies, and the particulars of the indebtedness of those companies among themselves.

[1] It did not clearly appear that prior to April 28, 1908, there was any express agreement that the General Electric Company should offset the debt of the managing company for merchandise purchased against the amount which it owed the subsidiary corporation for power supplied, although the methods of doing business, the relations of the corporations, and the course of dealing were such as to lead the General Electric Company reasonably to believe that it was dealing with the different corporations as a single enterprise and that such setoff would be allowed. Adjustments of accounts were also made tending to show that such was the understanding of the associated companies. On said April 28, 1908, however, an agreement was entered into between the General Electric Company and said Hudson River Electric Power Company, said Hudson River Electric Company, and another allied corporation, wherein it was expressly stipulated that power bills against the General Electric Company should be applied on the unsecured obligations of the associated companies, or any of them. This agreement was signed by the treasurer of the Hudson River Electric Company, and the offsets were duly made upon the books of the different corporations.

The settlement approved by the Circuit Court—from which approval this appeal is taken—recognized the set-off of the accounts in accordance with said agreement, and the propriety of the order appealed from may properly be tested by the validity of such set-off.[2] This question, however, necessarily involves and in great measure depends upon a larger question. The inter-relations of these associated corporations have an important bearing both upon the right of set-off irrespective of agreement, and upon the validity of the agreement conferring such right.

In the recent case of Matter of Watertown Paper Co., 169 Fed. 252, 94 C. C. A. 528, this court had occasion to state some general principles concerning the legal status of corporations, the affairs of which are involved and intermingled. In that case we said:

"It is an elementary and fundamental principle of corporation law that a corporation is an entity separate and distinct from its stockholders and from other corporations with which they may be connected. The fact that the stockholders of two separately chartered corporations are identical, that one owns shares in another, and that they have mutual dealings, will not, as a general rule, merge them into one corporation or prevent the enforcement against the insolvent estate of one, of an otherwise valid claim of the other. * * * The only exceptions to that rule [of separate corporate existence

---

[2] The respondents contend that the settlement may be approved on other grounds than upon the right of set-off. It is urged that it involved the cancellation of a contract burdensome to the Hudson River Electric Company and to other of the Hudson River Companies, as well as the discharge of a large amount in penalties due the General Electric Company for defaults under such contract. As indicated in the text, however, the controlling question upon which we shall either accept or reject the settlement is whether the right of set-off is or is not established. So, if we approve the settlement, it will stand upon the considerations stated therein—the setting off of the accounts, as well as, incidentally, the cancellation of the contract and the discharge of penalties. We shall not attempt to impose any new conditions or considerations upon the General Electric Company; e. g., that it release demands against the Hudson River Electric Company as indorser.

and liability] possibly applicable here are: (1) The legal fiction of distinct corporate existence will be disregarded when necessary to circumvent fraud. (2) It may also be disregarded in a case where a corporation is so organized and controlled and its affairs are so conducted as to make it merely an adjunct or instrumentality of another corporation."

There would be much ground for holding that the Hudson River Electric Company comes within the second exception to the rule of distinct corporate existence. The record clearly indicates that it was organized and controlled as a subsidiary corporation, and that its affairs were so conducted as to make it, practically, an adjunct of the managing corporation—the Hudson River Electric Power Company. It would seem that we would not be departing from established principles if we should regard this book credit of the Hudson River Electric Company as really existing in favor of the managing corporation, the Electric Power Company, against which, without special agreement, this demand against the managing corporation might properly be offset. It would be equitable so to hold. The Hudson Electric Company did not generate the power which it sold. It obtained it only through the bookkeeping of the managing company from another subsidiary corporation. The managing corporation did not use the merchandise which it bought. It distributed it among the various subsidiary companies. The offset could hardly be regarded as unfair to the Hudson River Electric Company. while it would be grossly unfair to the General Electric Company to compel it to pay its indebtedness to one of the companies and to look to an insolvent associate for the payment of its own account.[3]

But it is unnecessary to decide this case upon the ground just considered, and we distinctly refrain from so doing. As we have seen, the Hudson River Electric Company expressly agreed that the accounts in question should be offset, and with an agreement to that effect in the case, we are not obliged to determine the rights of the parties with it out.

The appellants, however, insist that the agreement of set-off constituted an ultra vires act upon the part of the treasurer of the Hudson River Electric Company, whether with or without the authority of the board of directors, "and that such action may be set aside by stockholders of the corporation or creditors who are injured thereby."

This contention asserts a right in creditors which does not ordinarily exist. The so-called "trust fund doctrine" affords no ground for the contention that creditors can interfere in the management of a going corporation. A corporation generally has the right to hold and dispose of its assets, subject only to the right of the state and of its stockholders to insist that it keep within the powers conferred by its charter. A creditor cannot come into a court of equity and enjoin a cor-

---

[3] It must be understood that in considering this case we are not laying down any general rule contravening the proposition urged by the appellants, that in the administration of the affairs of these associated corporations the assets of one corporation should not be diverted to pay the debts of another. We confine ourselves to the right of this particular claimant to insist upon a set-off of these particular accounts.

poration from making a contract or conveyance merely because it is ultra vires. He must show as a ground for the relief sought some fraud or breach of trust as against him. Similarly, we think it the better view that a creditor cannot intervene in a court of equity which is winding up the affairs of a corporation and object to the transfer of a portion of the corporate assets consummated long before the receivership merely upon the ground that the corporation in making such transfer exceeded its chartered powers. Either a fraudulent or voluntary conveyance should be shown.

[2] Assuming, however, that the appellant creditors may raise the question of ultra vires, we reach the same result. In our opinion, the officers of a subsidiary corporation, like the Hudson Electric Company, are not acting beyond its powers when they agree that credits which exist upon its books only through the action of a corporation which manages its affairs may be offset against the debts of such managing corporation. The relations of corporations of this nature are such that the courts should not be swift to hold ultra vires their mutual arrangements or to apply the test of direct special benefit in every transaction.

The appellants also contend that the agreement of set-off amounted to a fraudulent conveyance; but the essential element of an intent to defraud was wholly absent. Neither can it be said to have amounted to a voluntary conveyance, for the Hudson River Electric Company obtained thereby a large sum of money which it used to pay its bond interest with, and, besides, we think there were other considerations.

For these reasons it is our opinion that the accounts in question were properly set off, and that the agreement of settlement, recognizing such action and dealing with it, as well as with other matters, was properly approved by the Circuit Court.

The order is affirmed, with costs.