CHICAGO MILL & LUMBER CO. v. BOATMEN'S BANK.

(Circuit Court of Appeals, Eighth Circuit. April 27, 1916.)

No. 4570.

CORPORATIONS ⬦≈380—LIABILITY FOR DEBTS OF ANOTHER CORPORATION—PARTICIPATION IN MANAGEMENT.

> Where one corporation owns or controls the entire property of another, and operates its plant and conducts its business as a department of its own business, it is responsible for the obligations of the controlled corporation; but such responsibility does not follow because a corporation, which is a large creditor of another of doubtful solvency, takes an interest in the business of the latter, or even because it takes an active part in its management for the sole purpose of protecting its own interest as a creditor.

> [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1540; Dec. Dig. ⬦≈380.]

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action at law by the Boatmen's Bank against the Chicago Mill & Lumber Company. Judgment for plaintiff, and defendant brings error. Affirmed.

George F. Haid and James C. Jones, both of St. Louis, Mo. (Jones, Hocker, Sullivan & Angert, of St. Louis, Mo., on the brief), for plaintiff in error.

Sears Lehmann, of St. Louis, Mo. (Lehmann & Lehmann, of St. Louis, Mo., on the brief), for defendant in error.

Before HOOK and ADAMS, Circuit Judges, and ELLIOTT, District Judge.

ADAMS, Circuit Judge. The Boatmen's Bank, plaintiff below, sued the Chicago Mill & Lumber Company, a business corporation organized under the laws of Illinois, on a promissory note of $25,000.

The defendant, for its answer, admitted liability on the note, but pleaded a counterclaim against the plaintiff of this kind: It alleged that the bank was a creditor in a large amount of a corporation known as the Tiger Tail Mill & Land Company, and also an owner of a large part of its capital stock, and as such had the control and management of its business and property, for its own use and benefit; that the Paepcke-Leicht Lumber Company, another corporation, was the agent of the defendant; that, as such agent, it made certain loans and advances to the bank, under the name of Tiger Tail Mill & Land Company, and agreed to make certain purchases of lumber from it, the value and agreed price of which to be applied in reduction of the ad-

vances made and to be made; that afterwards the Paepcke Company, acting as such agent, entered into certain contracts with the bank, under the name of the Tiger Tail Mill & Land Company, by the provisions of which the bank agreed to deliver to the Paepcke Company, as agent for the defendant, all the output of its mill located at Tiger Tail, Tenn., during the period from September 8, 1910, to October 1, 1912; that the defendant, acting by and through its said agent, agreed to make certain advances of money as the lumber output of the Tiger Tail Company should be loaded on barges for shipment to the defendant, and did from time to time make such advances, and from time to time loaned to the plaintiff other sums of money in addition to such advances; that the defendant from time to time received from plaintiff, under its name of Tiger Tail Mill & Land Company, various shipments of lumber, the value and contract price of which were credited to the plaintiff; that the difference between the amount so advanced to plaintiff and the value of the lumber received from plaintiff was $32,387.57, which (less the credit of $4,445.18, which it concedes) it avers the plaintiff agreed and promised to pay to the defendant, but has failed to do so.

Plaintiff, for its replication, denied each and every allegation of the counterclaim, and alleged that any such contract or agreement as defendant claims to have been made with it was beyond its power as a banking corporation.

The case was tried to a jury, the defendant taking the burden of proof, and at the close of defendant's evidence the trial court, at the request of plaintiff's counsel, instructed the jury to find a verdict for the plaintiff for the full amount of the note sued on, and to find a verdict against the defendant and in favor of the plaintiff on defendant's counterclaim. On a verdict returned accordingly, judgment was entered for the plaintiff, and the defendant Lumber Company prosecutes this writ of error, not complaining of the judgment against it on plaintiff's cause of action, but complaining of the action of the court in directing a verdict against it on its counterclaim.

The proof showed that the Tiger Tail Company was organized in 1892 with a capital of $25,000, divided into 250 shares of $100 each, practically all of which was taken by Henry C. Bagby and Joanna L. Bagby; that some time after its organization Luther H. Conn became the owner of one-half of its capital stock, or 125 shares, the remaining 125 shares being owned by the original incorporators—Henry C. Bagby and his wife, Joanna L. Bagby. Mr. Bagby became the president of the company, and as such its chief executive officer, and continued so until 1906, during which time he secured for and on behalf of his company financial assistance from time to time from the Boatmen's Bank. During that time, and prior to July 25, 1906, the Tiger Tail Company became indebted to the bank in the total sum of $115,000, represented by its several promissory notes for various sums given from time to time as the exigencies of business required, upon which Luther H. Conn and Mrs. Bagby were indorsers; and Mrs. Bagby was also then personally indebted to the bank in the sum of $14,000, represented by notes, upon which both Conn and McRee were indorsers.

At about this time the St. Louis Clearing House began to criticize the loans of the bank to the Tiger Tail Company, and the amount of the loan not being reduced gradually, or at all, the indorsers became uneasy about the matter, and the bank itself became dissatisfied with the management of the company under Bagby, as its chief officer. As a result, a new deal was arranged by the parties interested, which was formally expressed in a contract of which the following is a copy:

"For and in consideration of the sum of two thousand dollars ($2,000.00) to us this day in hand paid by Luther H. Conn, of the city of St. Louis, we, H. C. Bagby and Joanna L. Bagby, of the city of St. Louis, do by these presents jointly and severally bargain and sell, transfer, assign, and set over unto the said Luther H. Conn, and unto his heirs and assigns, forever, all and every of our right, title, and interest in and to the stock of the Tiger Tail Mill & Land Company, a corporation, organized under the laws of the state of Missouri, with its principal office at the city of St. Louis; it being our intention, for the consideration above named, that all right, title, and interest of whatever kind and description of either of us in or to our stock holdings in said company shall pass absolutely to said Luther H. Conn, free from any rights or claims on our behalf. And we do by these presents deliver to the said Luther H. Conn all and every of the certificates of stock as they appear of record in the record books of said corporation, issued to or in the name of either of us, or in the name of any other person or persons, and do authorize the said Luther H. Conn to cause necessary transfers to be made on the record books of said company. The undersigned do further transfer, assign, and set over unto the said Luther H. Conn any and all claims of whatever kind and description which we may have against the Tiger Tail Mill & Land Company.

"Said Luther H. Conn by these presents undertakes and agrees that the indorsement of Joanna L. Bagby on notes of the Tiger Tail Mill & Land Company, held by Boatmen's Bank, aggregating approximately one hundred and five thousand five hundred dollars ($105,500.00), shall be canceled, so that the said Joanna L. Bagby shall be released from any liability under said indorsement. The said Luther H. Conn further undertakes and agrees that the said Joanna L. Bagby shall be released from all liability on account of the execution by her of a certain note of fourteen thousand dollars ($14,000.00), now held by Boatmen's Bank.

"Said Luther H. Conn further covenants and does hereby release the said Joanna L. Bagby from any further liability on account of a certain contract of sale between the said Joanna L. Bagby and the said Luther H. Conn of one hundred and twenty-five (125) shares of said Tiger Tail Mill & Land Company; said contract being dated St. Louis, Missouri, February 1, 1898. And the said Luther H. Conn does hereby further undertake and agree to secure from the Tiger Tail Mill & Land Company a release to the said H. C. Bagby and Joanna L. Bagby of any and all indebtedness which may be due by either of them to the said company, as they appear on the books of the company as of this date.

"In witness whereof the undersigned have set their hands at St. Louis, Missouri, this 25th day of July, 1906.        [Signed]     H. C. Bagby.
"Joanna L. Bagby.
"Luther H. Conn.

"Witness: Simon L. Boogher."

Pursuant to the terms of this contract Mr. Conn secured cancellation and surrender by the bank of all the notes upon which Mrs. Bagby was indorser, and the substitution in lieu thereof of the notes of the Tiger Tail Company, indorsed by himself, and secured by a pledge of all the stock of the Tiger Tail Company, which was put up with the bank as collateral security therefor. Afterwards, E. M. Hubbard, assistant cashier of the Boatmen's Bank, was elected president of the

company, to succeed Mr. Bagby in that office, and, as frequently expressed by all concerned, to incidentally protect the interests of the bank, which was, as a creditor, so largely interested in the success of the company, and one Harold J. Richards, was employed to be general manager of the company, and as such to take charge of the actual conduct of its business at the mill. Mr. Conn, being then the owner of all the capital stock of the company, transferred to Hubbard and Richards, each, 82 shares, or one-third thereof, subject, however, to the pledge of the same to the bank for the payment of its debt.

The new régime started out then with a debt of $115,000 due to the bank, represented by new notes upon which Mr. Conn, who was then considered entirely solvent, was indorser, and further secured by a pledge of all the capital stock of the company. The Tiger Tail Company soon made a contract with the defendant in this case, through its agent, the Paepcke Company, to ship its entire output to the defendant, the Chicago Company, and to secure from that company advances of money from time to time on shipments made and to be made to that company. In the meantime the business demanded the use of more money for its successful operation, and the bank undertook to furnish it, and did make such advances from time to time as were required by the Tiger Tail Company, until its debt had increased to $283,000. Bankruptcy of the Tiger Tail Company then supervened, and the bank was relegated to such relief, so far as the Tiger Tail Company was concerned, as the administration of the estate in bankruptcy afforded.

The foregoing are the substantial and uncontroverted facts of the case. In addition to them, Mr. Richards, who was the manager of the company at its mill at Tiger Tail, Tenn., testified that he got his directions from Mr. Hubbard, who frequently conferred with Mr. Lackland, the president of the bank, and that on one occasion Mr. Hubbard told him the property was to be run by the bank. Mr. H. C. Bagby testified that Mr. Lackland told him he had put Hubbard in as president of the Tiger Tail Company. Mr. William Wilms, vice president and treasurer of the Paepcke Company, agent of the defendant, testified as follows:

"Throughout our entire dealings in connection with the operations of the Tiger Tail Plant, we were led to believe, and it was affirmed to us and stated to us repeatedly, that the Boatmen's Bank owned and controlled the property; that Mr. Hubbard was in charge of the Tiger Tail Mill & Land property in order to protect the bank's interest in that investment."

In addition to this, it appears that the bank loaned the Tiger Tail Company money without security, other than that already mentioned, and when the Clearing House examiner criticized the loan of the bank to the Tiger Tail Company, a statement of its assets was obtained by Mr. Hubbard. It also appears that Mr. Conn took no active personal participation in the affairs of the company, and that the bank was the holder of all the bills payable of the Tiger Tail Company.

On this state of facts the defendant's contention was, and now is, that the bank so owned and controlled the Mill Company as to make it liable for debts contracted in the name of the latter company, and

also that the bank so undertook and promised to pay the excess due to the defendant as to render itself liable to it as on a direct promise to pay the same. The trial court ruled against these contentions, and held the proof to be insufficient to warrant, either a finding that the bank was the owner of the Tiger Tail Company, and, as such, liable for the payments of its debts, or that the bank ever promised to pay the debt due to the defendant; and on the defendant's evidence alone the court directed a verdict, and rendered a judgment, for the plaintiff on the defendant's counterclaim, as well as the plaintiff's cause of action. An exception was taken to this ruling, and upon it the assignment of error is predicated.

We think there was no error in this ruling. It is true that, apart from the question of ultra vires, not presently involved, when one corporation owns or controls the entire property of another, and operates its plant and conducts its business as a department of its own business, or as its alter ego, it is responsible for its obligations incurred in so doing. American National Bank v. National Wall Paper Co., 23 C. C. A. 33, 77 Fed. 85; Westinghouse Electric & Manufacturing Co. v. Allis Chalmers Co., 100 C. C. A. 408, 176 Fed. 362; Phillips v. Railroad, 211 Mo. 419, 438, 111 S. W. 109, 17 L. R. A. (N. S.) 1167, 124 Am. St. Rep. 786, 14 Ann. Cas. 742; Union Savings & Trust Co. v. Krumm (Wash.) 152 Pac. 681.

Was the proof that the business of the Tiger Tail Company was a part of the business of the bank, or that the bank had control and management of its business, as a department of its own, sufficient to make its obligations the obligations of the bank? Counsel for plaintiff in error contend that there was such actual evidence, or such fair and reasonable inferences deducible from that which was produced, as required a submission of this issue to the jury.

They argue that Conn paid no consideration for the Bagby stock, and that the pretended purchase by him was fictitious; the real purchaser being the Boatmen's Bank. In our opinion, this argument is not well taken. There is some controversy as to whether the $2,000 cash payment to Mrs. Bagby was ultimately paid by Conn, the Boatmen's Bank, or the Tiger Tail Company; but this is of little importance when the greater consideration paid by Conn is considered. Money was not the only consideration for the trade. Conn undertook to and did secure the release of Mrs. Bagby from all liability to the bank. He not only did that, but he subjected himself alone to liability as indorser on notes upon which Mrs. Bagby had been cosurety with him, amounting to $115,000. In other words, he took upon himself the sole liability for that debt and surrendered all right of contribution from Mrs. Bagby. This manifestly was a good, valuable, and sufficient consideration for the transfer of the stock to him.

They argue that the transfer by Conn of a substantial part of the capital stock to Hubbard and Richards, without consideration, demonstrates that Conn placed little or no value upon the stock. They forget, however, that it is a very common thing in business to stimulate the zeal of employés by giving them an interest in the business, with a view of promoting their efficiency. They also argue that, be-

cause the assistant cashier of the bank was made president of the Tiger Tail Company, a purpose was manifested to control the company by the bank. This argument overlooks the fact that the bank was a large creditor, and as such largely interested in the prosperity of the company, and most naturally should desire to keep an oversight over its doings.

It is further argued that proof of the declarations of the president of the bank and of Mr. Hubbard, the assistant cashier, to the general effect as already pointed out, and of Mr. Wilms as to the general understanding, indicate that the bank was the owner of the business of the company, or was conducting it in its own behalf, or at least constituted evidence, taken in connection with other facts of the case, sufficient to require submission of the case to the jury. But, when the generality and doubtful import of those statements are considered, it is apparent that, in so far as the one attributed to the president of the bank is concerned, it cannot afford the basis of a finding that the president intended to admit that his bank was the owner of this extraneous business, and in so far as the statements are attributed to the assistant cashier, they are manifestly so outside the general usage, custom, and course of dealing of banks and banking as to fall without the scope of his employment as assistant cashier, and in so far as they consist of a statement of Mr. Wilms, the vice president of the Paepcke Company, as to what was generally understood the bank was doing, they were totally incompetent and valueless.

Comprehensively speaking, they are all easily and naturally referable to a legitimate and customary practice of keeping an oversight by a creditor over the business, management, and operations of a debtor of doubtful solvency. All the facts of this case and all the reasonable inferences deducible from them would not, in our opinion, have warranted a jury in finding either that the Boatmen's Bank was carrying on the business of the Tiger Tail Mill & Land Company as a part of its own, or that it ever promised to pay the defendant its demand against the Tiger Tail Company.

We think there was no error in the direction by the District Court to find a verdict in this case in favor of the plaintiff on both its cause of action and the defendant's counterclaim. This conclusion renders any consideration of the question of ultra vires, debated by counsel, unnecessary.

The judgment is affirmed.