(98 South. 895)

## BIRMINGHAM REALTY CO. et al. v. CROSSETT. (6 Div. 886.)

(Supreme Court of Alabama. Dec. 13, 1923. Rehearing Denied Jan. 31, 1924.)

Corporations ⊛⇒548(8) — Bill of judgment creditor of one corporation against another corporation held sufficient as to only one phase.

A bill in equity by a judgment creditor of a transportation corporation against a realty corporation, seeking to hold the realty corporation liable for the judgment, on the theory that the transportation corporation was merely an instrumentality of the realty corporation, and seeking an accounting between the two corporations, *held* not subject to demurrer as to the accounting phase or so far as it attacked the bona fides of a mortgage between the two corporations, but subject to demurrer as to the other phase.

Anderson, C. J., dissenting, and Thomas and Gardner, JJ., dissenting in part.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill in equity by George Crossett against the Birmingham Realty Company and the Norwood Transportation Company. From a decree overruling demurrer to the bill respondents appeal. Affirmed in part, and reversed in part, and remanded.

The bill alleges that complainant was injured in a collision between a fire truck on which he was riding and an automobile bus of the Norwood Transportation Company; that in a suit against said company he recovered judgment, from which the defendant appealed to the Supreme Court, without executing supersedeas bond; that said judgment was by the Supreme Court affirmed, and this complainant on April 30, 1921, caused an execution to be issued and levied upon certain property of the defendant.

Paragraph 5 is as follows:

"(5) Your petitioner further shows that, after the levy of execution on the said automobile busses or trucks of the Norwood Transportation Company the Birmingham Realty Company, a corporation, did file a claim to the said automobile trucks or automobile busses, which claim does set up the nature of the claim, which claim as set up is that of a mortgage, executed by the Norwood Transportation Company to the said Birmingham Realty Company on the 26th day of February, 1919, to secure the sum of $25,000, of which mortgage a copy is hereto attached marked Exhibit A, and made a part hereof the same as if set forth herein."

By paragraphs 6, 7, 8, 9, and 10 it is alleged that the respondent Birmingham Realty Company was incorporated for the purpose, among others, of engaging in the general real estate business; that it owned certain tracts of land in the city of Birmingham, which it subdivided into residential lots, and put upon the market for sale; that as a part of its development scheme this respondent organized the corporation, known as the Norwood Transportation Company, to operate motor busses to and from its said subdivisions; that Birmingham Realty Company and individuals alleged to be in its employ subscribed for the corporate stock of the transportation company, and that the subscriptions by said individuals were not bona fide, but were on behalf of the realty company.

It is further alleged that the incorporation of the Norwood Transportation Company was not an honest use in good faith of the incorporation laws of the state, but was a fraudulent scheme to set up a dummy corporation as a buffer between the realty company and those who might have just claims against it; that the transportation company was not organized for the purpose of making money, but was a device to promote the sale of lots in its said subdivisions, transportation facilities to and from which were inadequate; that the transportation company is simply a department or bureau of the realty company, which has from time to time appropriated the moneys and property of the transportation company; and that by his recorded judgment complainant has a lien on all assets of the transportation company which have gone into the coffers of the realty company.

Paragraphs 19, 20, 21, and 22 are as follows:

"(19) Petitioner further alleges that he is informed and believes and does charge on information and belief that the mortgage of $25,000, which the Birmingham Realty Company claimed to hold as security for a loan of $25,000 to the Norwood Transportation Company was not a mortgage to secure a bona fide loan or bona fide indebtedness. On the contrary, complainant charges that any sum of $25,000, if ever actually advanced or paid, was so paid or expended by the Birmingham Realty Company under its direction and complete control for the purpose of improving the transportation system which the Birmingham Realty Company was operating in the name of its adjunct for the purpose of furthering the Birmingham Realty Company's development scheme in Norwood and Chestnutt Hills. Complainant further charges that it was not an honest bona fide loan from one corporation to another corporation, but was in reality a purported or pretended loan by the Birmingham Realty Company, which was simply a device in the guise of a loan whereby the Birmingham Realty Company might invest and did invest money in a transportation scheme to carry people to and from its lots in Norwood and Chestnutt Hills as a part of its real estate development scheme in those two places so that, among other results, through the enforcement and collection of this purported loan and mortgage, the Birmingham Realty Company could intervene and claim the assets of the Norwood Transporta-

⊛⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

BIRMINGHAM REALTY CO. v. CROSSETT 651
(210 Ala.)

tion Company in the event any liability was incurred by the operation of said transportation system by the realty company, which obligation said realty company did not want to pay.

"(20) Petitioner further alleges that the rich and timorous Birmingham Realty Company, not being satisfied with the hoped for protection afforded it by the fraudulent incorporation of its dummy, Norwood Transportation Company, became alarmed in February, 1919, when your petitioner's case for damages was tried in the circuit court of Jefferson county, Ala., and resulted in a mistrial on, to wit, February 4th, and did in that same month cause to be executed the mortgage from its dummy, the Norwood Transportation Company, to it in the sum of $25,000 in furtherance of the fraudulent scheme to escape its just obligations as herein above set forth, which mortgage is hereto attached and made a part hereof as Exhibit A. And petitioner further alleges that at the time of said mortgage other people had also been injured by the busses of the Norwood Transportation Company, and had suits for damages pending against the Norwood Transportation Company in the circuit court of Jefferson county, Ala., on one or more of which suits judgments have also been rendered in substantial amount against the Norwood Transportation Company.

"(21) Petitioner further alleges that this $25,000 mortgage by this $5,000 corporation was made but a short time after the representative of the dummy, Norwood Transportation Company, had told the attorney of your petitioner that the dummy was thoroughly solvent. Petitioner further shows that on execution levied no assets were found belonging to the dummy, Norwood Transportation Company, other than those it mortgaged after the mistrial in February to the respondent herein.

"(22) Petitioner further alleges that, by reason of the legal guise in which the corporate organization of the Norwood Transportation Company was effected, and the legal guise of the loan and mortgage, petitioner herein has no adequate remedy at law for the redress of the wrongs which he has suffered by reason of the scheme whereby the Birmingham Realty Company was actually in equity and good conscience operating the busses, one of which injured your petitioner."

The prayer is for an accounting to ascertain the amount of assets of the transportation company in the hands of the realty company that are subject to the lien of complainant; that the incorporation of the transportation company be decreed a mere sham or dummy, and a department of the realty company; that the assets of the realty company are subject to complainant's judgment at law, and for general relief.

London, Yancey & Brower, of Birmingham, for appellants.

Equity has no jurisdiction to enforce common-law actions for damages. Wynn v. Tallapoosa Bank, 168 Ala. 469, 53 South. 228. Stockholders are subject to no additional liability than unpaid stock. McDonald v. Ala. Ins. Co., 85 Ala. 401, 5 South. 120; Snider's Sons Co. v. Troy, 91 Ala. 224,

8 South. 658, 11 L. R. A. 515, 24 Am. St. Rep. 887; Swofford Bros. v. Owen, 37 Okl. 616, 133 Pac. 193, L. R. A. 1916C, 189; Magnolia Shingle Co. v. Zimmern's, 3 Ala. App. 578, 58 South. 90; Cory v. Lee & Mangum, 93 Ala. 468, 8 South. 694; Chamberlain v. Bromberg, 83 Ala. 576, 3 South. 434; Elyton Co. v. B'ham Co., 92 Ala. 407, 9 South. 129, 12 L. R. A. 307, 25 Am. St. Rep. 65; Smith v. Huckabee, 53 Ala. 191; Const. 1901, § 236; Code 1907, § 3468. The existence of a corporation cannot be assailed collaterally. Code 1907, § 3445, and authorities; Stockton v. Am. Tob. Co., 55 N. J. Eq. 352, 36 Atl. 971. The complainant's remedy is at law. Snider's Sons Co. Troy supra; Magnolia Shingle Co. v. Zimmern's, supra; 20 C. J. 17, 28. One who sues a corporation and obtains judgment is estopped to deny corporate existence. Thompson v. Howard, 31 Mich. 309; 7 Ency. Pl. & Pr. 38; Huntsville v. Corpening, 97 Ala. 681, 12 South. 295; Fidelity Co. v. Art Metal Co., 162 Ala. 326, 50 South. 186; Swofford Bros. v. Owen, supra; 14 C. J. 248; Baker v. Brown Shoe Co., 78 Ark. 501, 95 S. W. 808; Owensboro Wagon Co. v. Bliss, 132 Ala. 253, 31 South. 81, 90 Am. St. Rep. 907; Williams v. Quin, 44 Cal. App. 296, 186 Pac. 402; Perkins v. Fish, 121 Cal. 317, 53 Pac. 901.

Black, Harris & Foster, Harsh, Harsh & Harsh, and Bowers, Dixon & Bowron, all of Birmingham, for appellee.

A court of equity will disregard the fiction of distinct corporate entity in order to prevent fraud. 1 Fletcher on Corp. 55; 14 C. J. 59; Moore & Handley Hdw. Co. v. Towers Hdw. Co., 87 Ala. 206, 6 South. 41, 13 Am. St. Rep. 23; Christian & Craft Groc. Co. v. Fruitdale Lbr. Co., 121 Ala. 340, 25 South. 566; Linn & Lane Timber Co. v. United States, 196 Fed. 597, 116 C. C. A. 267; Searchlight Horn Co. v. Am. Graphophone Co. (D. C.) 240 Fed. 747; Hunter v. Baker Motor Vehicle Co. (D. C.) 225 Fed. 1015; Clere Clothing Co. v. Union Trust & Savings Bk., 224 Fed. 366, 140 C. C. A. 49; Exploration Mercantile Co. v. Pac. H. & S. Co., 177 Fed. 829, 101 C. C. A. 39; In re Rieger, Kapner & Altmark (D. C.) 157 Fed. 613; Joseph R. Foard Co. v. State of Md., 219 Fed. 829, 135 C. C. A. 497; Spokane Merchants' Ass'n v. Clere Clothing Co., 84 Wash. 616, 147 Pac. 414; U. S. v. United Shoe Mach. Co. (D. C.) 234 Fed. 140; In re Eilers Music House (C. C. A.) 270 Fed. 933; J. J. McCaskill Co. v. U. S., 30 Sup. Ct. 386, 54 L. Ed. 590; Interstate Tel. Co. v. B. & O. R. R., 51 Fed. 49.

This cause was submitted and considered under rule 46 (178 Ala. 19, 65 South. 7), and the opinion of the court was delivered by

THOMAS, J. A fireman for the city of Birmingham having received an injury caused by negligence on the part of the driv-

er of an automobile bus of a transportation company, obtained judgment, which was affirmed in Norwood Transportation Co. v. Crossett, 207 Ala. 222, 92 South. 461. Execution issued on this judgment was levied on the property of that transportation company, which was claimed by this respondent as mortgagee. The judgment of affirmance against the transportation company was on February 9, 1922, and on March 14th the instant suit was filed. In response to demurrer the bill was last amended on August 31, 1922.

The bill as amended contained a detailed statement of the averred relationship between the Birmingham Realty Company, a corporation (appellant), and the Norwood Transportation Company, a corporation, which raises the point that the former's corporators, under the averred facts, are shown to have organized the transportation corporation fraudulently as a device to evade personal obligation or liability incident and necessary to the furnishing of due or required transportation to and from the realty subdivisions of the Birmingham Realty Company and the city of Birmingham. That is to say, the theory of the bill is that the promotors and stockholders of the corporation formed and incorporated the same for an illegal purpose to shield it and them from the consequences of their contracts, acts, and duties incident to such transportation company, and primarily to relieve the Birmingham Realty Company from liability in the conduct of one of its businesses or enterprises at the places indicated. Moore & Handley Hdwe. Co. v. Towers Hdwe. Co., 87 Ala. 206, 6 South. 41, 13 Am. St. Rep. 23; Stone v. Walker, 201 Ala. 130, 77 South. 554, L. R. A. 1918C, 839; Christian & Craft Gro. Co. v. Fruitdale Lbr. Co., 121 Ala. 340, 25 South. 566; 1 A. L. R. 613; 14 C. J. p. 58, § 19, p. 126, § 119; L. R. A. 1916C, 202b.

It is unnecessary to observe that no question of reorganization, consolidation, or merger of corporations is presented by the pleadings before us. Boyette v. Preston Motors Corporation, 206 Ala. 240, 89 South. 746, 18 A. L. R. 1376; Alabama Fidelity, etc., Co. v. Dubberly, 198 Ala. 545, 73 South. 911.

The general rule applied in federal courts is that a court of equity will disregard the fiction of distinct corporate existence whenever a corporation is so organized, controlled, and its affairs conducted as to make it merely an instrumentality, department, or incidental business of another corporation, in the sense that it is a mere "dummy" or "shadow" of the holding corporation. And, when this is the case, to prevent a fraud equity will subject the assets of the real and holding corporation to the satisfaction of a judgment against the "dummy" corporation. 14 C. J. p. 62, note 82; Miller & Lux, Inc., v. East Side C. & I. Co., 211 U. S. 293, 29 Sup. Ct. 111, 53 L. Ed. 189; Lehigh Min. & Mfg. Co. v.

Kelly, 160 U. S. 327, 336, 16 Sup. Ct. 307, 40 L. Ed. 444, 447. See, also, Interstate Tel. Co. v. B. & O. Tel. Co. (C. C.) 51 Fed. 49; United States v. United Shoe Mach. Co. (D. C.) 234 Fed. 127, 140; In re Eilers Music House (C. C. A.) 270 Fed. 915; Martin v. Development Co. of America, 240 Fed. 42, 153 C. C. A. 78; Spokane Merchants' Ass'n v. Clere Clothing Co., 84 Wash. 616, 147 Pac. 414.

The observation of the theory of the bill is well founded—not that complainant is asking a court of equity to enforce his common-law claim for damages, nor to enforce a liability against the individuals holding stock in the several corporations. The plaintiff, George Crossett, as the original plaintiff in judgment in the suit at law, did not have two legal remedies available to him (Mobile Towing & Wrecking Co. v. Hartwell, 208 Ala. 420, 95 South. 191) when he pursued the remedy at law to the judgment and appropriate execution thereon. It was necessary to a realization of Crossett's rights as a judgment creditor to resort to equitable principles for the collection from that corporation which was the real actor in the matter—the Birmingham Realty Company—in collecting and holding the properties and funds of defendant in judgment.

The general rules that one who sues a corporation is estopped to deny its corporate character, and that its existence cannot be assailed collaterally, present for decision the question in the case. Complainant (appellee) did not assail the corporate existence of the Norwood Transportation Company, but admitted that it "is a legally established corporation," in that all the forms and requirements of law were complied with in its formation; and hence the necessity for Crossett's suit in equity against the Birmingham Realty Company for the injury inflicted as averred. That is to say, complainant avers the fact constituting the true relationship between the Birmingham Realty Company and the Norwood Transportation Company invokes the aid of a court of equity to ascertain and declare the identity in equity of the two corporations, and that they are "one and the same corporation" in the accounting sought. The demurrer to the bill as amended was overruled, and a case for equitable jurisdiction was held to be thereby presented; though it was declined by the decree to hold that the judgment at law against the Norwood Transportation Company was a binding judgment against the Birmingham Realty Company. It was decreed such judgment was one which, in equity and good conscience, the Birmingham Realty Company should pay, after accounting, from the amount of money or other assets of the Norwood Transportation Company which have gone into the treasury of the Birmingham Realty Company, and that conveyances of the properties of the Norwood Transportation Company were in

fraud of creditors and of the complainant's claim.

Counsel state the question for decision must exist on the fundamental assumption that legally was the Norwood Transportation Company was a separate corporation from the Birmingham Realty Company; yet under the facts averred and the prayer of the amended bill the two corporations are in a sense identical, and subject to an accounting and to final liability.

It is averred that the "interlocking history" of the two corporations will not show "any transaction whereby the Birmingham Realty Company paid the Norwood transportation Company for rendering services" in the business of transporting passengers for the former corporation from its subdivisions and real properties to and from the city of Birmingham; but that all the proceeds earned in that service are taken by the realty company, which manages and controls the former corporation; that the end of the common purposes was the furnishing of adequate transportation from its real properties to and from the city of Birmi ham, and the Norwood Transportation Co ny discharged a necessary function of t Birmingham Realty Company, and mad available and desirable the real properties n the two subdivisions indicated until adequate street car services were provided.

In Moore & Handley Hdwe. Co. v. Towers Hdwe. Co., 87 Ala. 206, 6 South. 41, 13 Am. St. Rep. 23, this court declared:

"In those cases where 'associates combine together to create a paper corporation, to cover a partnership or joint venture, and where the stockholders are partners in intention,' and have resorted to the fiction of separate corporate entity to free themselves from individual obligations which had attached to them, with respect to the business they propose to carry on, prior to the organization of the company, courts of equity, when the ends of justice require it, will disregard and look beyond the fiction of corporate entity, and hold the corporation to a discharge of the liabilities resting on its members; and this may be done, although some of the shareholders had not originally incurred the obligation sought to be enforced, provided they had notice of it before entering the corporation, and participated in the effort to avoid it. Davis Imp. Wrought Iron W. W. Co. v. Davis Wrought Iron W. Co., 20 Fed. Rep. 700; Beal v. Chase, 31 Mich. 490, 495, 532." Rudisill Soil, etc., Co. v. Eastham, etc., Co., ante, p. 145, 97 South. 219.

And in Christian & Craft Gro. Co. v. Fruitdale Lbr. Co., 121 Ala. 340, 25 South. 566, the announcement is contained that, where "there is no bona fide purpose and effort to organize the real corporation with capital to respond to its liabilities, but the purpose and effort are to put forward a sham without capital or assets to cover a real partnership and the carrying on of a partnership business exempt from liability as a partnership, the purpose and effort are abortive, the pretended existence of a corporation is open to a collateral attack as a mere fraudulent device, and, though on the face of the proceedings there is a regular and complete incorporation, the pretended corporate entity is to be taken as nonexistent, except as to persons who have contracted with it as a corporation in such way as to estop themselves to show the fraud."

The foregoing principle has been frequently adverted to by the federal courts. In Hunter v. Baker Motor Vehicle Co. (D. C.) 225 Fed. 1006, 1015, is contained the announcement that the exceptions to the general rule of separate corporate existence and liability are: The legal fiction of distinct corporate entity is disregarded, when necessary to do so in order to circumvent fraud, and also when a corporation is so organized and controlled and its affairs are so conducted as merely to make it an instrumentality or adjunct of another corporation. In re Watertown Paper Company, 169 Fed. 252, 255, 94 C. C. A. 528, 532, 22 Am. Bankr. Rep. 190, 194, 195.

The earlier case of Exploration Mercantile Co. v. Pacific H. & S. Company, 177 Fed. 825, 829, 839, 840, 101 C. C. A. 39, 43, 53, 54, contains these statements:

"* * * The conception that a corporation is a legal entity, existing separate, apart and distinct from the natural persons who compose it, is a fiction which has been introduced for convenience in making contracts, acquiring property, suing and being sued, and to secure limited liability on the part of stockholders. 'It is a certain rule,' says Lord Mansfield, C. J., 'that a fiction of law shall never be contradicted so as to defeat the end for which it was invented, but for every other purpose it may be contradicted.' * * * The fiction of a corporate entity was never invented to promote injustice or defraud, and when it is used for such a purpose it should be disregarded, and the actual fact should be ascertained." Many authorities are cited. 7 Am. & Eng. Ency. of L. 633, 634; 1 Cook on Corp. (5th Ed.) p. 27. "The corporate entity cannot be so disguised that it can successfully masquerade in the name of a stockholder, and, evading the searching eyes of a court of equity, hinder, delay, and defraud its creditors and defeat the provisions of the bankruptcy act. A court of equity looks through forms to the substance of things, thus preserving the rights of innocent parties against all forms of deception and fraud."

It would appear that the fundamental proposition urged by complainant was touched upon in In re Rieger, Kapner & Altmark (D. C.) 157 Fed. 609, 613, where the announcement is made that—

"The fiction of legal corporate entity cannot be so applied by the partners as to work a fraud on a part of their creditors, or hinder and delay them in the collection of their claims, and thus defeat the provisions of the bankrupt

act. The doctrine of corporate entity is not so sacred that a court of equity, looking through forms to the substance of things, may not in a *proper case* ignore it to preserve the rights of innocent parties or to circumvent fraud." (Italics supplied.)

This exception to the general rule indicated was recognized in W. A. Liller Bldg. Co. v. Reynolds, 247 Fed. 90, 159 C. C. A. 308; In re Eilers Music House (C. C. A.) 270 Fed. 915; Macfadden v. Jenkins, 40 N. D. 422, 169 N. W. 151, 163; Spokane Merchants' Ass'n v. Clere Clothing Co., 84 Wash. 616, 147 Pac. 414, 416; Eichelberger v. Arlington Bldg., Inc., 280 Fed. 997, 999, 52 App. D. C. 23; United States v. United Shoe Machinery Co. (D. C.) 234 Fed. 127; Linn & Lane T. Co. v. United States, 236 U. S. 574, 35 Sup. Ct. 440, 59 L. Ed. 725; State v. Standard Oil Co., 49 Ohio St. 137, 30 N. E. 279. See, also, 15 L. R. A. 145, 34 Am. St. Rep. 541.

The argument of appellant's counsel as to stockholders' liability, and individual liability for corporate obligations or duties, is beside the question presented (McDonnell v. Ala., etc., Ins. Co., 85 Ala. 401, 410, 5 South. 120; Snider's Sons' Co. v. Troy, 91 Ala. 224, 232, 8 South. 658, 11 L. R. A. 515, 24 Am. St. Rep. 887; Cory v. Lee, 93 Ala. 468, 9 South. 694; Chamberlain v. Bromberg, 83 Ala. 576, 583, 3 South. 434; Elyton Land Co. v. Birmingham Warehouse & Elevator Co., 92 Ala. 407, 414, 9 South. 129, 12 L. R. A. 307, 25 Am. St. Rep. 65; Smith v. Huckabee, 53 Ala. 191, 193; Sampson v. Fox, 109 Ala. 662, 670, 19 South. 896, 55 Am. St. Rep. 950), it being the right to collaterally assail the existence of a corporation in the manner and under the circumstances specifically averred in the bill. This effort is not concluded by the provisions of the statute for organization or incorporation of corporations (section 3445 et seq. of the Code), or the decision in Snider's Sons' Co. v. Troy, supra. The case of Stockton v. American Tobacco Co., 55 N. J. Eq. 352, 36 Atl. 971, is not apt.

Mr. Cook, in his work on Corporations (volume 1 [5th Ed.] § 6, p. 24 et seq.), says of "dummy" and fraudulent corporations that the court will sometimes ignore the corporate existence in order to do justice, and that "the corporate existence will be disregarded, and the acts and contracts of the persons holding all the stock will be considered the acts and contracts of the corporation itself, where the effect is the same as though the corporation had acted or contracted as a corporation. Hence, where all the stock is combined with all the stock of other companies in order to form a combination which is illegal, the state will forfeit the charter of the corporation, although technically it is not a party to the agreement" (State v. Standard Oil Co., 49 Ohio St. 137, 30 N. E. 279, 15 L. R. A. 145, 34 Am. St. Rep. 541); and that it was decided that property acquired by and in the name of the "dummy" corporation may be held to be subject to a mortgage executed by the owner of said "dummy" corporation; and a contract between three local companies by which one runs over the tracks of another for a consideration paid to the third is legal as to the second corporation, where such second corporation is a mere "dummy" of the third corporation, and the earnings of both corporations go together. Union Pac. Ry. Co. v. Chicago, etc., Ry. Co., 163 U. S. 564, 592, 16 Sup. Ct. 1173, 41 L. Ed. 265, 275.

The exception is also recognized in many authorities collected to support the text of 14 C. J. § 5, pp. 52, 53, §§ 19, 20, 25, pp. 59, 62, that it is now well settled that "the legal fiction of distinct corporate existence may be disregarded in a case where the corporation is so organized and controlled and its affairs are so conducted as to make it merely an instrumentality or adjunct of another corporation." Miller, etc., Co. v. East Side Canal, etc., Co., 211 U. S. 293, 29 Sup. Ct. 111, 53 L. Ed. 189; Northern Sec. Co. v. United States, 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679; Joseph R. Foard Co. v. Maryland, 219 Fed. 827, 135 C. C. A. 497 (damages); Chicago Mill, etc., Co. v. Boatmen's Bank, 234 Fed. 41, 148 C. C. A. 57; Chicago, etc., Co. v. Myers, 168 Ill. 139, 48 N. E. 66; In re Watertown Paper Co., 169 Fed. 252, 94 C. C. A. 528; B. & O. T. Co. v. Interstate T. Co., 54 Fed. 50, 4 C. C. A. 184; Id. (C. C.) 51 Fed. 49; Clere Clothing Co. v. Union Trust, etc., Co., 224 Fed. 363, 140 C. C. A. 49; Pittsburg & Buffalo Co. v. Duncan et al., 232 Fed. 584, 146 C. C. A. 542; Gay v. Hudson River, etc., Co., 187 Fed. 12, 14, 109 C. C. A. 66.

Mr. Fletcher, in his Cyclopedia of Corporations, vol. 1, § 45, p. 63, declares:

"Agency for parent corporation. The legal fiction of distinct corporate existence may also be disregarded in a case where a corporation is so organized and controlled, and its affairs are so conducted as to make it merely an instrumentality, conduit or adjunct of another corporation. Hunter v. Baker Motor Vehicle Co., 225 Fed. 1006; Gay v. Hudson River Elec. Power Co., 187 Fed. 12; Westinghouse Elec. & Mfg. Co. v. Allis-Chalmers Co., 176 Fed. 362; In re Muncie Pulp Co., 139 Fed. 546; O'Brien v. Champlain Const. Co., 107 Fed. 338; Kelly Ning Yung Benev. Ass'n v. Clere Clothing Co., 84 Wash. 616, 147 Pac. 414. It is not enough, however, that shareholders in the corporation are identical. Richmond & I. Const. Co. v. N. I. & B. R. Co., 68 Fed. 105, 108, 34 L. R. A. 625. Nor is it enough that one corporation owns shares in the other, and that they have interrelated dealings. In order to warrant treating them as one, it must further appear that they are the business conduits and the alter ego of one another. Where it appeared that a railroad corporation caused a telegraph company to be incorporated, became the sole owner of all of its stock, elected its own officers and employees as officers thereof, and hold out the telegraph company as authorized to contract for the railway telegraph system, it was held that the railway company

was in substance the owner of the telegraph company, that the telegraph company was a mere department or a bureau of the railroad, and that they were in legal contemplation identical. Interstate Tel. Co. v. Baltimore & O. Tel. Co., 51 Fed. 49, aff'd 54 Fed. 50. In another case, under much similar facts, a different result was reached on the grounds, first, that separate corporate organizations were kept up; second, that such corporation had its own assets and creditors, and conducted business in its own name; and, third, that separate books of account were kept. In re Watertown Paper Co., 169 Fed. 252. The dividing line is very shadowy, and is pricked out by the gradual approach and contact of decisions on the opposite sides."

In Martin v. Development Co. of America, 240 Fed. 42, 45, 153 C. C. A. 78, 81, Circuit Judge Hunt said: "A holding corporation has a separate corporate existence, and is to be treated as a separate entity, unless facts are averred which show that such separate corporate existence is a mere sham, or has been used as an instrument for concealing the truth, or where the organization and control are shown to be such as that it is but an instrumentality or adjunct of another corporation," and, we may add, where the parent or controlling corporation has made of it an instrumentality, conduit, business department, or "dummy," as in the control and payment of the employees and the collection of funds from the subsidiary or departmental corporation, etc. That is to say, ordinarily, however, the fiction of distinct corporate entity is adhered to, and the two corporations are treated as distinct entities. While the legal fiction of distinct corporate existence will be disregarded, when necessary to prevent fraud, or when a corporation is 'so organized and controlled and its affairs so conducted as to make it only an adjunct or instrumentality of another, it requires a strong case to induce a court of equity' to consider two corporations as one, on account of one owning all the capital stock of the other. 14 C. J. p. 63, note; 1 Cook on Corporations (7th Ed.) § 317; Peterson v. C., R. I. & P. Ry., 205 U. S. 364, 390 et seq., 27 Sup. Ct. 513, 51 L. Ed. 841, 852.

So much for the general authorities. In our court it is held that evidence of fraud may be shown for the purpose of attacking the corporate existence of the alleged corporation at the instance of a third party. Christian & Craft Gro. Co. v. Fruitdale Lbr. Co., 121 Ala. 340, 346, 25 South. 566; L. R. A. 1916C, 202; Bridgeport Development Co. v. Tritsch, 110 Ala. 274, 20 South. 16. It should result from the foregoing that the demurrer interposed to the bill was properly overruled, and that the judgment of the circuit court in equity should be affirmed. In the foregoing Mr. Justice GARDNER concurs.

The majority, composed of Justices SAYRE, SOMERVILLE, MILLER, and BOULDIN, while believing that the phase of the bill for accounting, at complainant's instance, as to the moneys and properties of Norwood Transportation Company received or held by the respondent, has equity, and was not subject to demurrer interposed, yet are of opinion that the bill is without equity in the phase thereof seeking to hold the Birmingham Realty Company and its assets liable to the judgment against Norwood Transportation Company, and in that aspect is subject to demurrer.

If the foregoing views of the writer (concurred in by Mr. Justice GARDNER) be not well founded in respects as indicated by the opinion of the majority, Justices GARDNER and THOMAS join in the opinion that the accounting prayed for should be had. All the justices (aside from Mr. Chief Justice ANDERSON) are of opinion that the phase of the bill (specifically exhibited in paragraphs 5, 19, 20, 21, and 22) challenging the bona fides of the $25,000 mortgage, is not subject to any ground of demurrer directed to the bill as amended, and that relief against the mortgage, if warranted by the evidence, may be awarded under the general prayer.

Mr. Chief Justice ANDERSON dissents, and agrees with the majority as to that phase of the bill which they hold is without equity, and, while the bill may contain equity as a creditors' bill and for accounting, thinks it is defective as such, and that demurrer should be sustained.

The judgment of the circuit court in equity is affirmed in part, in part reversed, and remanded, at the cost of the appellee.

Affirmed in part, reversed in part, and remanded.

SAYRE, SOMERVILLE, GARDNER, MILLER, and BOULDIN, JJ., concur.
ANDERSON, C. J., dissents.

On Rehearing.

THOMAS, J. Since preparing the views expressed on the original hearing, the writer has found other cases which he thinks he should bring to the attention of the majority.

The case of Portsmouth Cotton Oil Refining Co. v. Fourth Nat. Bank of Montgomery (D. C.) 280 Fed. 879, was to the effect that a bank which organized a subsidiary corporation to handle property it owned, and which had no capital or property, except that supplied by the bank, was liable for damages sustained by a purchaser of property from the corporation, which paid the bank for the same, where the property was not as represented and warranted.

The case of Martin v. Development Co. of America, 240 Fed. 42, 153 C. C. A. 78, decided February 13, 1917, was before Chicago, Milwaukee & St. Paul R. Co. v. Minn. Civic & Com. Ass'n (October term, 1917), 247 U. S. 490, 501, 38 Sup. Ct. 553, 62 L. Ed. 1229, 1237. The following expression of Mr. Justice

Clarke in the latter case was in line with the announcement made by Mr. Chief Justice McClellan in Moore & Handley Hdwe. Co. v. Towers Hdwe. Co., 87 Ala. 206, 6 South. 41, 13 Am. St. Rep. 23, and that contained in Christian & Craft Gro. Co. v. Fruitdale Lbr. Co., 121 Ala. 340, 25 South. 566:

"Much emphasis is laid upon statements made in various decisions of this court that ownership alone of capital stock in one corporation by another does not create an identity of corporate interest between the two companies, or render the stockholding company the owner of the property of the other, or create the relation of principal and agent or representative between the two. * * *

"While the statements of the law thus relied upon are satisfactory in the connection in which they were used, they have been plainly and repeatedly held not applicable where stock ownership has been resorted to, not for the purpose of participating in the affairs of a corporation in the normal and usual manner, but for the purpose, as in this case, of controlling a subsidiary company so that it. may be used as a mere agency or instrumentality of the owning company or companies. United States v. Lehigh Valley R. Co., 220 U. S. 257, 273, 55 L. Ed. 458, 463, 31 Sup. Ct. Rep. 387, and United States v. Delaware, L. & W. R. Co., 238 U. S. 516, 59 L. Ed. 1438, 35 Sup. Ct. Rep. 873. In such a case the courts will not permit themselves to be blinded or deceived by mere forms of law, but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require."

The decision in United States v. Lehigh Valley R. Co., 220 U. S. 257, 273, 31 Sup. Ct. 387, 391, 55 L. Ed. 458, 463, was by Mr. Chief Justice White, who said:

"That the facts thus averred and the other allegations contained in the proposed amended bill tended to show an actual control by the railroad company over the property of the coal company and an actual interest in such property beyond the mere interest which the railroad company would have had as a holder of stock in the coal company is, we think, clear. The alleged facts, therefore, brought the railroad company, so far as its right to carry the product of the coal company is concerned, within the general prohibitions of the commodities clause, unless for some reason the right of the railroad company to carry such product was, not within the operation of that clause. The argument is that the railroad company was so expected [excepted] because any control which is exerted or interest which it had in the product of the coal company resulted from its ownership of stock in that company, and would not have existed without such ownership. The error, however, lies in disregarding the fact that the allegations of the amended bill asserted the existence of a control by the railroad company over the coal corporation and its product, rendered possible, it is true, by the ownership of stock, but which was not the necessary result of a bona fide exercise of such ownership, and which could only have arisen through the use by the railroad of its stock ownership for the purpose of giving it, the railroad company, as a corporation, for its own corporate purposes, complete power over the affairs of the coal company, just as if the coal company were a mere department of the railroad. Indeed, such a situation could not have existed had the fact that the two corporations were separate and distinct legal entities been regarded in the administration of the affairs of the coal company."

In United States v. Delaware, L. & W. R. Co., 238 U. S. 516, 35 Sup. Ct. 873, 878, 59 L. Ed. 1438, 1443, it is said:

"But the decisions construing the statute recognize that one corporation can be an agent for another corporation, and that by means of stock ownership one of such companies may be converted into a mere agent or instrumentality of the other. United States v. Lehigh Valley R. Co., 220 U. S. 257, 273, 55 L. Ed. 458, 463, 31 Sup. Ct. Rep. 387. And this use of one by the other—or this power of one over the other—does not depend upon control by virtue of the fact that stock therein is held by the railroad company or by its shareholders. For dominance of the coal company may be secured by a carrier. (New York, N. H. & H. R. Co. v. Interstate Commerce Commission, 200 U. S. 363, 50 L. Ed. 515, 26 Sup. Ct. Rep. 272), not only by an express contract of agency, but by any contract which, in its practical operation, gives to the railroad company a control or an 'interest, direct or indirect,' in the coal sold, at the mouth of the mines."

Mr. Justice GARDNER agrees with the foregoing.