BARTLETT PRESLEY and another *vs.* THOMAS LOWRY and
another.

June 29, 1878.

Principal—When Bound by Declaration of Agent.—Application, to the facts
of this case, of the rule of evidence, that the declaration of an
agent binds his principal only when it is made during the continuance
of the agency, in regard to a transaction then depending, and upon the
ground that it is a verbal act, and part of the *res gestæ.*

Appeal by defendant Lowry from an order of the district
court for Ramsey county, *Simons,* J., presiding, refusing a
new trial.

*C. K. Davis,* for appellant.

*W. P. Warner,* for respondents.

BERRY, J. It is alleged in the complaint that the plain-
tiffs, in July, 1872, docketed, in the county of Hennepin, a
judgment in their favor against one Erickson, for $2,393.63,
which thereupon became a lien upon certain real estate of
which Erickson was owner; that in April, 1874, defendant
Lowry, and Erickson, made an agreement, by the terms of
which Erickson, on the one hand, was to convey said real
estate to Lowry, or to such person as he might designate,
subject to all incumbrances thereon; and, on the other hand,
Lowry, as part of the consideration of such conveyance, was
to pay the judgment aforesaid, and cause the same to be sat-
isfied; that Erickson thereupon conveyed the real estate
pursuant to the agreement, and Lowry promised to pay the
judgment and cause the same to be satisfied, but has failed
to perform his promise. The allegations as to the agree-
ment upon Lowry's part are denied in the answer.

The issue thus raised as to the promise alleged to have
been made by Lowry was the most important issue in the
case, and the testimony bearing upon it was conflicting and
contradictory. The testimony introduced by the plaintiffs
went to show that Lowry made the promise; that introduced

by the defendants, that he never made it.    Erickson, having been called as a witness by the plaintiffs, was asked what Lowry said to him about Presley, at the time when he (Erickson) made the conveyance to Lowry.    His answer was to the effect that Lowry wanted him to ask Presley if he would like to settle the judgment; that he told him to go to Presley and try to settle it, and if he did not succeed, to tell Presley to come to Minneapolis, (where Lowry lived,) and he (Lowry) would trade real estate for the judgment, and the witness added, "I went down to Presley, and told him to go up there." On being asked to repeat the "talk" between him and Lowry, the witness proceeded, in substance, as follows, viz.: "He (Lowry) told me to go down to Presley, and tell him to come up there and settle with him for the judgment, and I did so." The plaintiff Kemp, having testified that Presley and himself were partners, that he learned from Erickson that he had sold the real estate before mentioned to Lowry, and having further testified that he did not remember whether Presley was present or not at the time when Erickson informed him of the sale, was asked what Erickson said.    The question having been objected to as incompetent, irrelevant and immaterial, the objection overruled, and exception taken, the witness answered as follows: "Mr. Erickson said that Mr. Lowry had purchased this property from him, and would settle our claim in full."

"A party's own admission, whenever made, may be given in evidence against him; but the admission or declaration of his agent binds him only when it is made during the continuance of the agency, in regard to a transaction then depending, *et dum fervet opus*.    It is because it is a verbal act, and part of the *res gestæ*, that it is admissible at all."    1 Greenl. Ev. § 113.    Proof that Lowry had authorized Erickson to make the statement testified to by Kemp, would have been evidence of an admission by Lowry of the facts stated.    But proof that Erickson made the statement was admissible only upon the theory that he was acting for Lowry—that is,

that he was Lowry's agent; and, in addition, to render the statement admissible, it must appear that Erickson made it in regard to and in the course of the transaction of the business which he was authorized to transact, and in the transaction of which he was engaged when he made the statement. Now, while from the testimony of Erickson as to the authority given him by Lowry to confer with Presley in reference to settling the judgment, we think the jury would have had the right to infer an authority to confer with Kemp in reference to the same matter, if it appeared that Kemp and Presley were partners, and, as such, owners of the judgment, there is no evidence in the case tending to show that Erickson was engaged in exercising, or in any way assuming or attempting to exercise, the authority conferred upon him by Lowry, when he (Erickson) had the conversation with Kemp. There is nothing tending to show that the conversation with Kemp was anything more than a merely casual conversation, entirely outside of Erickson's authority, and without any purpose as respected such authority or its exercise; and there is no evidence going to show that Lowry, upon being informed of the statement made by Erickson, assented to it, or acquiesced in it. Within the well-established rule quoted from Greenleaf, Kemp's testimony as to what Erickson said was immaterial, because no facts were proven to lay a foundation for its admission, by showing that Lowry was bound or in any way affected by it.

The effect of the ruling of the court was to instruct the jury that this testimony was material, and as, upon that understanding of it, it is altogether probable that it exercised an influence upon the verdict, its erroneous admission calls for a new trial.

We think the other assignments of error not well made. The letter was admissible as part of the history of the transactions between Lowry and Erickson. As to the charge of the court, the portion complained of by the defendant was, perhaps,

not quite as carefully expressed as it should have been, but the defendant took no exception to it.

Order reversed, and new trial directed.