EMMETT P. BROWNING *vs.* WM. H. HINKLE.

Argued Jan. 4, 1892.   Decided March 8, 1892.

**Evidence.— Sayings of Officers of Corporations.**—The declarations or
representations of individual directors or officers of a corporation, relat-
ing to its affairs, but not shown to have been made in the course of, or
connected with the performance of, their authorized duties as agents,
are not binding on the corporation.

Appeal by plaintiff, Emmett P. Browning, assignee, from an order
of the district court of Hennepin county, *Pond,* J., made July 10,
1891, refusing a new trial.

The Price-Condit Fence Company was incorporated October 1, 1886,
under 1878 G. S. ch. 34, tit. 2.   Its capital stock was $80,000, di-
vided into 1,600 shares of $50 each.   The corporation issued to de-
fendant, William H. Hinkle, on January 13, 1887, fifty of these shares.
He bought them of his brother-in-law, Foote, who caused them to be
issued directly to defendant.   The corporation became insolvent, and
on November 4, 1890, made an assignment of its property to plaintiff
in trust for the benefit of its creditors.   Its assets were insufficient
to pay its debts.   Its board of directors had, by resolution made
prior to the assignment, called for, and ordered collected, all unpaid
subscriptions for stock.   This suit was brought to recover of defend-
ant, William H. Hinkle, $1,312.50, which it was claimed remained
unpaid upon his fifty shares of stock.

Before defendant obtained his stock, he conversed with Foote, who
was a director, and with Daynes, who was secretary, of the corpora-

tion, regarding these fifty shares, and was told by them that they were fully paid up stock. A Mr. Thomas had obtained letters patent for a fence, and had assigned to Foote and others all his rights under it in certain northwestern states. These purchasers organized the Price-Condit Fence Company, and assigned to it their rights under the Thomas patent, and paid in $6,000 in cash and $4,000 in materials, and received all the stock of the corporation. Defendant bought a part of Foote's stock. Plaintiff contended that the patent rights were valued in the transaction at $28,000, which, with the cash and materials, made but $38,000 paid in upon the capital stock, leaving fifty-two and a half per cent. unpaid. The defendant claimed that these patent rights were valued in the transaction at $70,000, and that the stock was fully paid up stock. Much evidence was given on this question by both parties, but the court, on the conclusion of the evidence, ordered the jury to return a verdict for defendant, on the ground that he bought this stock of Foote after the corporation was organized, supposing it to be full paid nonassessable stock; that defendant took particular pains to go to officers of the corporation and inquire, and was told by some of them that the stock had all been paid for; that he had a right to rely on this information; and that plaintiff could not now, as assignee, deny it, and recover.

*Davis & Farnam*, for appellant.

The respondent, Hinkle, testifies that the stock was issued to him by the company in pursuance of certain conversations which he claims to have had with Mr. Foote, as a director, and with Mr. Daynes, as secretary, of the company. The statements made to him by the officers of the company as to the stock being full paid are very vague and indefinite, and, if made at all, were made some time during December, 1886. It does not appear in evidence that the officers named had any authority to make any statements or admissions that would be binding upon the company or estop it from claiming that the stock was not paid for. Statements and admissions made by an agent or officer after the completion of a transaction are not binding upon the principal, unless it be shown that the agent or officer was specially authorized to make the statements or admissions concerning the bygone transaction. *Lowry* v. *Harris*, 12 Minn. 255, (Gil.

166;) *Presley* v. *Lowry*, 25 Minn. 114; *Kalamazoo Novelty Mfg. Co.* v. *McAlister*, 36 Mich. 327; *Johnston* v. *Elizabeth B. & L. Ass'n*, 104 Pa. St. 394; *Franklin Bank* v. *Cooper*, 36 Me. 179; *Lime Rock Bank* v. *Hewett*, 52 Me. 533; *Tripp* v. *New Metallic Packing Co.*, 137 Mass. 499; *Henry* v. *Bank*, 63 Ala. 527.

To permit the respondent to testify to statements and admissions made under the circumstances related, and that he relied upon such statements and admissions, and purchased the stock in pursuance of them, without the necessary supporting evidence that the officers or agents were authorized by the principal to make such statements or admissions, was clearly error on the part of the court below.

*Keith, Evans, Thompson & Fairchild*, for respondent.

The respondent was not one of the incorporators of the Price-Condit Fence Company, and had nothing to do with it till nearly two months after it had become incorporated. He then learned that certain letters patent, cash, merchandise, and accounts had been transferred to the company by the promoters, and that the same had been received by it in full payment for its capital stock of $80,000; that most of the stock had been issued to different promoters, who had paid for it by such transfer; and that Mr. Foote had thus paid for two hundred shares. He was informed both by Foote and by the officers of the company that the stock was all full paid. He thereupon bought of Foote fifty shares of the stock, and paid him for it. Foote owned this number of shares for which no certificate had been issued, and at his request a certificate therefor was issued to Hinkle. Hinkle did not buy any stock from the company, or pay it anything. His sole purchase of stock was of Foote. By accepting a certificate directly from the company, respondent did not, under the circumstances, incur any liability therefor. *Young* v. *Erie Iron Co.*, 65 Mich. 111; *Carling's Case*, 1 Ch. Div. 115; 1 Beach, Corp. § 131.

Before buying this stock of Foote, respondent inquired of the officers of the company—and of the secretary, among others—concerning the condition of the entire stock of the company, and concerning the fifty shares that he was proposing to purchase, and was informed that all the stock had been paid for in full, and informed how it had been paid for, viz. by the transfer to the company of the patents.

cash, materials, etc. Relying upon the statements of the officers of the company, respondent bought his stock of Foote. Under such circumstances, the company is estopped, and cannot afterwards claim that the stock was not paid in full. *First Nat. Bank* v. *Gustin Minerva C. M. Co.*, 42 Minn. 327; Cook, Stocks, § 418.

DICKINSON, J. This is an action by a receiver of an insolvent corporation, the Price-Condit Fence Company, to recover the price of fifty shares of the stock of the corporation, which were issued to the defendant, and for which, as is alleged, only partial payment has been made. It is admitted on the part of the defendant that he did not pay to the corporation the price of the stock, but it is claimed that he did not purchase the stock from the corporation, but from one Foote, one of its members, and that Foote, being entitled to receive the stock, transferred his right to the defendant, and that the corporation issued the stock to the defendant in place of Foote, in accordance with the agreement of the parties. It is also claimed that the stock was fully paid for by Foote and his associates, the original incorporators, by the transfer by them to the corporation of certain patent rights and property at a valuation agreed upon, which, with some money paid, amounted to $80,000, which was designated in the articles of incorporation as the amount of the capital stock.

Upon the case as presented at the trial, the court directed a verdict for the defendant. The reason upon which the court acted was that the evidence was deemed to show, without contradiction, that before the defendant purchased the stock, or the interest represented by it, he made inquiry of some of the officers of the corporation, and that they stated to him that the stock had all been paid for in the manner above indicated, and that the defendant was thus induced to purchase from Foote, and to receive the certificate of stock from the corporation; and it is upon this ground that the respondent here seeks to sustain the ruling of the court. It is not here claimed that the evidence of payment, in fact, was so conclusive that the court would have been justified in taking that issue from the jury. The declarations of the officers of the corporation, that the stock had been paid for, were not shown to have been made under such circumstances that they would be binding upon the cor-

poration as its declarations, or preclude it from afterwards asserting the fact to be otherwise than as represented. Aside from the somewhat vague and uncertain character of the proof as to who made the alleged declarations, the evidence is defective in not showing in any manner that, when the officers or directors made the alleged representations, they were clothed with authority to speak for the corporation. The mere fact that one is a director, president, secretary, or other officer of a corporation, does not make all his acts or declarations, even though relating to the affairs of the corporation, binding upon the latter. Such persons are mere agents, and their declarations are binding upon the corporation only when made in the course of the performance of their authorized duties as agents, so that the declarations constitute a part of their conduct as agents,—a part of the *res gestæ*. *Presley* v. *Lowry*, 25 Minn. 114; *Tripp* v. *New Metallic Packing Co.*, 137 Mass. 499; *Peek* v. *Detroit Novelty Works*, 29 Mich. 313; *Johnston* v. *Elizabeth B. & L. Ass'n*, 104 Pa. St. 394; Cook, Stocks, (2d Ed.) § 726, and cases cited. There was no proof of authority on the part of any of the persons whose declarations are relied on, beyond the fact that they were officers or directors. Nor are the circumstances disclosed under which the representations were made. So far as appears, the statements were in no way connected or associated with the performance of any duty devolving upon, or any power delegated to, the agents who made them. While the representations relate to the subject of the corporate stock, yet the theory of the defendant, and the evidence in support of it, are opposed to the idea that the representations constituted a part of a transaction of sale of the stock by the corporation; for the contention of the defendant is that he did not purchase from the corporation at all, but from Foote. Our conclusion is that the evidence was incompetent, and did not justify the court in directing a verdict for the defendant.

Order reversed.

(Opinion published 51 N. W. Rep. 605.)