### MARTIN v. DEVELOPMENT CO. OF AMERICA.

(Circuit Court of Appeals, Ninth Circuit. February 13, 1917.)

No. 2822.

1. CORPORATIONS ⟨⟩1—HOLDING COMPANIES—NATURE OF.
    A holding company, which owns the stock of another corporation, is to be treated as a separate entity, unless such separate corporate existence is a mere sham, or is used as an instrument for concealing the truth, or is a mere instrumentality of such other company.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1, 3–6.]

2. CORPORATIONS ⟨⟩585—SEPARATE EXISTENCE—HOLDING COMPANIES.
    In determining whether a holding company is liable for the debts and contracts of the corporation whose stock it held, the fact that the holding company exercised a control by reason of its stock ownership is to be considered, although it is not of itself enough to establish liability on the theory of a merger.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2332–2337.]

3. CORPORATIONS ⟨⟩215—HOLDING COMPANIES—LIABILITY.
    Defendant holding company, having a contract to purchase mines, organized the bankrupt corporation and caused title to be taken in its name.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The development and operation of the mines were conducted in the name of the bankrupt corporation; defendant causing it to issue bonds secured by a deed of trust upon all its property, including shares of stock in subsidiary companies organized. The proceeds of the bonds and stocks of the bankrupt, which were received by the defendant, were used in buying and developing and operating the mine properties. Before the bankruptcy of the mining company, the holding company sued to foreclose the deed of trust on its property, and after bankruptcy judgment was rendered. There was no concealment in the transactions; the bankrupt company incurring debts on its own credit. *Held* that, notwithstanding the holding company, through an agent, bought in the property on foreclosure sale had after bankruptcy, such company could not, there being no concealment or merger, be held liable for the debts and contracts of the bankrupt company.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 826–828, 845–848, 852, 854.]

Appeal from the District Court of the United States for the District of Arizona.

Bill by John H. Martin, as trustee in bankruptcy of the Imperial Copper Company, a corporation, against the Development Company of America, a corporation. From a decree dismissing the bill, complainant appeals. Affirmed.

The plaintiff, Martin, trustee in bankruptcy of the Imperial Copper Company of Arizona, brings this bill in equity against the Development Company of America, a Delaware corporation, owning property and transacting business in Arizona. The bill alleges that the defendant Development Company held a contract for the purchase of certain mining properties in Pima county, Ariz., for the sum of $515,000, and that thereafter, on or about May 11, 1903, the defendant created and caused the said Imperial Copper Company, a corporation, to be organized under the laws of Arizona for the purpose of consummating said purchase for the use and benefit of defendant Development Company; that all of the incorporators, directors, officers, etc., of the Copper Company were at all times employés of the Development Company, and until on or about March 31, 1915, owned all of the capital stock of the Copper Company; that until the latter's adjudication as a bankrupt, in 1911, it elected all the directors, officers, etc., of the Copper Company from its own (Development Company's) employés, directors, etc., and transacted all the business and handled and appropriated to its own use all the moneys derived from the operation of the said mining properties, and caused the title to the mining properties involved to be taken in the name of and operated by the Copper Company for the use and benefit of the Development Company in order to facilitate the business of the latter in developing the mining properties; that F. M. Murphy, of Arizona, was president of the Development Company, and is now, and has been since November 9, 1909, the president of the Copper Company, and that the Development Company created and used the Copper Company as an auxiliary, subsidiary, branch, agent, and instrumentality in carrying on its mining business; that the Development Company in 1903 caused the Copper Company to execute a first mortgage or deed of trust upon all the mining property referred to, to secure a $2,000,000 bond issue of the latter, for the use and benefit of the Development Company; that all such bonds were issued and delivered to the latter company, which used the proceeds of their sale in its business of operating mining properties, and also used the capital stock of the Copper Company, of the par value of $5,000,000, to the same purpose; that the Development Company, in 1903 and 1904, also caused to be organized under the laws of Arizona two "dummy corporations," known as the Arizona Southern Railroad Company and the Southern Arizona Smelting Company, elected all their officers, directors, etc., and at all times controlled their affairs as departments of its own business, and caused all the shares of the capital stock to be issued to and held in the name of the said

Copper Company, and then (in 1904) caused all the shares to become subject to the lien of the Copper Company mortgage as additional security for the before-mentioned $2,000,000 bond issue.

It is alleged on information and belief that on July 3, 1911, the Development Company, being then a holder of the majority of the bonds and capital stock of the Copper Company, instituted a suit in the district court of the First judicial district of the territory of Arizona to foreclose the mortgage or deed of trust on all of the mining properties and on the shares of stock of the Railroad and Smelting Companies; that on December 28, 1914, it obtained a decree of foreclosure and order of sale; that the Development Company then caused all of said mining properties and shares of stock to be sold under the foreclosure, and to be bid in, in the name of Leo Goldschmidt, at the price of $90,000 for the mining properties and $12,000 for the Railroad and the Smelting Company stock, all this for the use and benefit of the Development Company and Murphy, its president, and that they (Development Company and Murphy), as the real parties in interest in the purchase at the foreclosure sale, are now negotiating for the sale of all the above-mentioned properties and stock to the American Smelting & Refining Company of New Jersey, which company is now in possession of and working the mining properties; that on July 5, 1911, a petition in bankruptcy was filed against the Copper Company by certain creditors, and on July 25, 1911, it was adjudged a bankrupt; that the total of allowed claims in said bankruptcy proceeding is $1,280,-686.22; that at the first creditors' meeting, held on August 12, 1911, M. P. Freeman was elected trustee, and acted as such until July 2, 1914, at which time he resigned, and plaintiff was elected and qualified as such trustee.

Plaintiff then proceeds to allege, on information and belief, that there was some character of agreement between the Development Company and Murphy, its president, on the one hand, and the creditors of the bankrupt company, on the other; that it was to the effect that the bankruptcy proceedings should lie dormant to enable the Development Company and Murphy to raise sufficient funds with which to discharge said debts, and that the creditors, relying upon the promises made by the Development Company and Murphy, allowed the proceedings to lie dormant until 1914, and until the qualification of the plaintiff as trustee, and that any seeming delay was caused by the Development Company and Murphy themselves, whom he alleges, on information and belief, controlled the bankruptcy proceedings until plaintiff was elected trustee; that the action of the Development Company in causing the mining properties and railroad and smelting stock to be sold at foreclosure resulted in stripping the Copper Company of practically all of its assets, with the exception of certain personal property for which $500 was bid at public and $1,400 at private sale, and that insufficient moneys and property have come into plaintiff's hands, as trustee, to pay any dividends upon claims filed and allowed by the referee; that by reason of the matters set forth the Development Company became and is liable for all of the debts of the Copper Company, and that all of the said mining properties and shares of stock purchased at the foreclosure by the Development Company, or for its use and benefit, are liable for all of said debts.

The prayer asks that plaintiff have judgment for $1,280,686.22, the amount of the allowed claims in the bankruptcy proceeding, and that it be decreed that all the mining properties and shares of stock in the Railroad and Smelting Companies be liable for the claims of creditors of the Copper Company, and that such claims of creditors be decreed to be liens upon the properties acquired by the Development Company under the foreclosure proceeding, etc., and for alternative relief. The District Court dismissed the bill for lack of equity, and the trustee in bankruptcy appeals.

Francis M. Hartman and Edwin F. Jones, both of Tucson, Ariz., for appellant.

Everett E. Ellinwood, John M. Ross, and Leslie C. Hardy, all of Bisbee, Ariz., and Selim M. Franklin, of Tucson, Ariz., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] Passing the question of the right of Martin, as trustee, to maintain this suit against the Development Company, we believe that the facts stated do not make the Development Company liable for the debts and defaults of the Copper Company. A holding corporation has a separate corporate existence, and is to be treated as a separate entity, unless facts are averred which show that such separate corporate existence is a mere sham, or has been used as an instrument for concealing the truth, or where the organization and control are shown to be such as that it is but an instrumentality or adjunct of another corporation. Pittsburgh & Buffalo Co. v. Duncan et al.; 232 Fed. 584, 146 C. C. A. 542; In re Watertown Paper Co., 169 Fed. 252, 94 C. C. A. 528.

[2, 3] The Development Company, appellee, back in 1903, had a contract to purchase certain mines described, and caused the Copper Company to be organized. The Development Company acquired the mines, and caused title to be taken in the name of the Copper Company, and caused the development and operation of the mines to be conducted in the name of the Copper Company. Other companies were also organized at the direction of the Development Company, and the capital stock. of these companies was issued to the Copper Company. Later, but back in 1903, the Development Company caused the Copper Company to issue $2,000,000 of bonds, secured by deed of trust upon all of the property of the Copper Company, including the shares of stock in the Smelting and Railroad Companies owned by the Copper Company. All the bonds and all the capital stock of the Copper Company were issued and delivered by the Copper Company to the Development Company, and the Development Company used the bonds and stocks and proceeds of the sale of the bonds and stocks in buying, developing, and operating the mining properties.

It is alleged that the Development Company long since disposed of the bonds and shares of stock of the Copper Company and used the proceeds in development and operation of the mining properties. No facts are alleged which show a concealment in these transactions, and none can be presumed under the showing made. The stockholders who purchased became the owners of the assets of the Copper Company, subject to the debts of the corporation. Legal title of the mining properties was always in the Copper Company, and development and operation were carried on in its name. It incurred debts amounting to over $1,000,000 in its own name, and finally in 1911 was declared a bankrupt. Under such a state of facts the contracts of the Copper Company cannot bind the Development Company, for each corporation was separately organized, and operated under separate, distinct, organization without such interrelationship as would make the Copper Company but an instrument or adjunct of the Development Company.

The fact that the Development Company exercised a control over the Copper Company, through its stock ownership or identity of directorate, is to be considered, but by itself is not enough to establish a merger, or to make the Copper Company in its contracts the agent

of the Development Company. In Clere Clothing Company v. Union Trust & Savings Bank, 224 Fed. 363, 140 C. C. A. 49, this court applied the rule that there may be a virtual relationship of principal and agent between two corporations; but the facts of that case showed a systematic purpose and scheme whereby, from the organization of one corporation down to the time of its bankruptcy, it was acting solely in the capacity of agent of another company, and it was held that in presenting its claim it was deliberately attempting to prove debts against itself, in fraud of legitimate creditors of the bankrupt corporation.

In Linn & Lane Timber Company v. United States, 196 Fed. 593, 116 C. C. A. 267, we find another case where this court held to the rule that, when proper showing is made, equity will go beyond corporate form to ascertain whether a corporation is being used as a fraud. But again the facts showed that one of the purposes for which the corporation was formed was to conceal fraudulently therein titles to the lands which were the subject of the suit, and to keep the title so concealed until the time when the statute of limitations should bar an anticipated suit by the government to set aside the patents. Here, upon petition of creditors, the Copper Company was duly adjudged a bankrupt. There is no averment that the creditors ever looked to the Development Company as their debtor. Furthermore, it appears that the mining properties were sold under decree in foreclosure of a mortgage, and which never has been and is not herein assailed as fraudulent or illegal. The Copper Company was a party to the foreclosure proceedings, which, while instituted before the bankruptcy petition was filed, were not brought to decree until several months after the trustee in bankruptcy was appointed. Martin, Trustee, v. Bankers' Trust Company, Trustee (Ariz.) 156 Pac. 87. Martin, as trustee, intervened.

The allegation, made upon information and belief, that at the foreclosure sale the property was bought by one Goldschmidt, who was the mere agent of the Development Company, and the prayer that all of the properties be decreed to be part of the assets of the Copper Company, bankrupt, cannot avail the trustee, if the Development Company is not liable for the debts of the unsecured creditors of the Copper Company; and as we must conclude that there is no such liability the appellant is not entitled to relief.

The judgment is therefore affirmed.