[Civil No. 2154.   Filed December 10, 1924.]

[230 Pac. 1109.]

# UNITED STATES SMELTING, REFINING AND MINING EXPLORATION COMPANY, a Corporation, and UNITED STATES SMELTING, REFINING AND MINING COMPANY, a Corporation, Appellants, v. WALLAPAI MINING AND DEVELOPMENT COMPANY, a Corporation, Appellee.

1. CORPORATIONS—BURDEN OF PROVING AGENCY OF PARTY CONTRACTING ON PARTY ALLEGING FACT.—Where written agreement, declared on as breached, contained no words indicating that one, with whom it purported to be made, was acting for another, it was incumbent on plaintiff to establish allegation that he was agent duly authorized to act for defendant corporation.

2. CORPORATIONS—AGENCY, IN EXECUTION OF CONTRACT, FOR CORPORATION NOT THEN IN BEING, IMPOSSIBLE.—One cannot act for corporation, not then in being, in executing contract; agent without principal being impossible.

3. CORPORATIONS—THAT PARTY MAKING CONTRACT WAS GENERAL OR FIELD MANAGER OF CORPORATION HELD NOT TO SHOW HIS AGENCY THEREFOR.—That party executing contract was general or field manager of corporation at time and long afterward *held* not to show that he was its duly authorized agent in execution thereof.

4. CORPORATIONS—LETTER-HEADS HELD NOT COMPETENT EVIDENCE OF AGENCY.—Letters written by party to contract, bearing letter-heads of corporations, of which he was employee, are not competent evidence of his agency therefor in executing contract.

5. PRINCIPAL AND AGENT—AGENT'S DECLARATIONS NOT EVIDENCE OF FACT OR EXTENT OF AGENCY.—Declarations of alleged agent are not evidence of fact nor extent of agency, but, at best, are mere hearsay, not admissible against principal, whether oral or written, until agency is proved by other evidence.

6. MINES AND MINERALS—OFFICER CONTRACTING PERSONALLY HELD NOT SHOWN TO BE AGENT.—That consulting engineer and general manager of company, which took over and operated mines under contract, declared on as breached, was also official of defendant corporations, one of which was not organized until after contract

1.   See 21 R. C. L. 891.   3.   See 7 R. C. L. 628.   5.   See 7 R. C. L. 670.

was made by him, *held* not evidence that it was defendants' joint contract, or that he or company operating mines was defendants' agent in so doing.

7. PRINCIPAL AND AGENT—ONE DEALING WITH AGENT MUST ASCER-TAIN FACT OF AGENCY AND NATURE AND EXTENT OF AUTHORITY—ONE CLAIMING AGENCY MUST PROVE IT.—To bind principal, one dealing with agent, whether general or special, must ascertain, not only fact of agency, but nature and extent of authority, and, if either is controverted, burden is on him to establish it.

8. MINES AND MINERALS—CORPORATIONS TREATED AS SEPARATE AND DISTINCT IN ABSENCE OF COMMON STOCKHOLDERS OR DIRECTORS.—Corporations having separate charters and no common stockholders or directors must be treated as separate and distinct, though one or more were holding companies and another a subsidiary, organized to operate mines taken over by former under contract, in absence of averment of facts showing that separate corporate existence is mere sham, used to conceal truth, or that organization and control are such that one is but instrumentality or adjunct of another.

9. APPEAL AND ERROR—JURY'S VERDICT ON NONCONFLICTING EVIDENCE NOT BINDING ON SUPREME COURT.—Where evidence in all material ways points same direction, and question is not its truth or weight, but its effect, jury's verdict is not binding on Supreme Court.

10. EVIDENCE — JURY CANNOT CONJECTURE AND ASSUME NECESSARY CONTROLLING FACTS NOT IN EVIDENCE.—Jury, in arriving at verdict, have no legal right, in absence of evidence, to conjecture and assume necessary and controlling facts.

See (1) 14A C. J., p. 399.   (2) 14A C. J., p. 421 (1926 Anno.). (3) 14A C. J., p. 425.   (4) 14A C. J., p. 405 (1926 Anno.).   (5) 2 C. J., pp. 935, 938, 939.   (6) 27 Cyc., p. 766.   (7) 2 C. J., pp. 562, 584, 923, 925.   (8) 27 Cyc., p. 764 (1926 Anno.).   (9) 4 C. J., p. 857. (10) 23 C. J., p. 56.

APPEAL from a judgment of the Superior Court of the County of Mohave.   E. Elmo Bollinger, Judge. Judgment reversed and cause remanded, with directions to dismiss complaint.

Mr. Carl G. Krook and Mr. Alfred Sutro, for Appellants.

Mr. C. W. Herndon and Mr. Frank Pierce and Mr. R. L. Alderman, for Appellee.

7. See 7 R. C. L. 668.

ROSS, J.—The Wallapai Mining & Development Company, as plaintiff, recovered judgment against the defendants United States Smelting, Refining & Mining Exploration Company and the United States Smelting, Refining & Mining Company, corporations, for the sum of $20,000, and the latter appeal.

We will designate the Wallapai Company as plaintiff and the two defendants as defendants, or as the Exploration Company and the Mining Company.

Briefly, plaintiff states its cause of action as follows: That on December 14, 1909, it was the owner of mining claims known as the Tennessee group of mines, situate in Mohave county, Arizona; that on that date it granted to A. P. Anderson the sole and exclusive right and option to purchase at any time within ten years, upon the terms therein stated, said group of mines, together with all the personal property, consisting of buildings, machinery, and improvements; that said Anderson (who was also made a party defendant but dismissed, not having been served with process) was in the making of the contract "acting for and on behalf of the said defendants, . . . and the said defendants then and there pursuant to the terms of said agreement entered into possession of said premises and control of the aforesaid properties, and worked and developed the same and extracted and shipped ores therefrom"; that one of the covenants of the agreement was that Anderson, or his assigns, or the parties for whom he was acting, if property was surrendered, would leave in good repair and working order, reasonable wear and tear thereof excepted, all tools, machinery, buildings, appliances, and personal property situate thereon belonging to plaintiff; that on December 14, 1917, said mines and premises were surrendered to plaintiff by defendants, but that defendants failed to keep said covenant and did not leave the tools,

machinery, buildings, appliances and personal property, but on the contrary destroyed, removed and converted such property (enumerating it), to plaintiff's damage in the sum of $22,665.

The defendants filed separate identical answers denying the allegations of the complaint. The case was tried before a jury, whose verdict was in favor of plaintiff.

There are a number of assignments, but as we view the case it will not be necessary to consider them all. It is contended by the defendants that the verdict and judgment are not supported by the evidence, and that the court erred in the admission, over their objection, of certain evidence. Our attention will be confined to these two assignments.

The written agreement, declared on as breached, on its face is between plaintiff as party of the first part and Anderson as party of the second part, and contains no words indicating or suggesting that the latter was acting for anyone except himself. It was therefore incumbent upon plaintiff to establish by competent evidence its allegation that Anderson in entering into said contract was the agent of the defendant companies, duly authorized to act for them. This the plaintiff did not do. At the time of the making of the contract the Exploration Company was not *in esse*. It was not organized until February 24, 1912, over two years after date of contract. So far as this defendant is concerned, it was impossible for Anderson to have acted for it in the execution of contract. It is inconceivable that there should be an agent without a principal. The evidence upon this point, as it affects the Mining Company, is that Anderson was its general manager or Pacific Coast manager at the time of entering into contract, and for a long time thereafter. But this of itself proves nothing. Over objection, many letters

written by Anderson and other employees of the Exploration Company and the Mining Company, bearing the letter-heads of defendant Exploration Company, were introduced, not that their contents had any bearing upon the issue of agency, but upon the theory that the letter-heads themselves were evidence of Anderson's agency. There were also two letters on the letter-heads of the Mining Company introduced, but they were written subsequent to December 14, 1917, the date the Tennessee group of mines were surrendered to the plaintiff.

These letter-heads were not competent evidence of such agency and the court erred in admitting them for that purpose. The rule is well established, not only in this state but elsewhere, that the declarations of an alleged agent are not evidence of the fact of agency, nor the extent thereof.

"The agency must be proved by other evidence before his (the agent's) acts and statements can be shown against the principal. At best such declarations are mere hearsay. The rule applies equally to oral statements of the agent and the written statements, contained in letters, letter-heads, receipts, or other documents implying, admitting, or claiming authority to act as agent in the negotiations with the third person." 31 Cyc. 1652.

See, also, *Navajo-Apache Bank & Trust Co.* v. *Willis,* 21 Ariz. 610, 193 Pac. 297; *Franklin* v. *Havalena Mining Co.,* 18 Ariz. 201, 157 Pac. 986; *Petterson* v. *Stockton etc. R. Co.,* 134 Cal. 244, 66 Pac. 304; *Smith* v. *Liverpool etc. Co.,* 107 Cal. 432, 40 Pac. 540; *Blanke Tea & Coffee Co.* v. *Rees Printing Co.,* 70 Neb. 510, 97 N. W. 627; *Klumpp et al.* v. *American Hardware Mfg. Co.,* 50 Misc. Rep. 662, 99 N. Y. Supp. 326; *Heimerdinger* v. *Lehigh Val. R. Co.,* 26 Misc. Rep. 374, 56 N. Y. Supp. 188.

The allegation of the complaint that the defendants, Exploration Company and Mining Company,

"then and there pursuant to the terms of said agreement entered into possession of said premises and control of the aforesaid properties, and worked and developed the same and extracted and shipped ores therefrom," has no support in the evidence. As we have stated, the Exploration Company was not organized until more than two years after the making of said contract. It was not an entity and could not, by agent or otherwise, take possession of the Tennessee group of mines, work and operate the same. It is undisputed that six days before Anderson entered into contract with plaintiff there was organized a corporation known as the Needles Mining & Smelting Company, of which Anderson was the consulting engineer, and that it was this company that "then and there" took possession of the Tennessee group of mines, worked and developed them, extracted and shipped ores therefrom; that Anderson and wife on September 11, 1910, assigned his contract to the said the Needles Company; that thereafter, on August 26, 1910, Anderson and wife quitclaimed the Tennessee group of mines to said company; that it was against this company the property was assessed by the county and state taxing authorities and that it paid the taxes on said property from 1909 to 1917; that it employed and paid the miners who worked in mine; that it was sued, according to the court records of Mohave county, for personal injuries by employees injured while working in mines; that it rendered (as the agreement with Anderson required) regular statements to the plaintiff of the ore produced; that it paid plaintiff, in conformity with the terms of contract, on the fourteenth day of December of each year, for eight years, the sum of $10,000 fixed royalties; and that it was the entity that was openly and unquestionably operating the Tennessee group of mines the eight

years they were operated under the Anderson contract.

The plaintiff in its brief admits that the operations at the mines were carried on by the Needles Company, but claims such company was acting as the agent of the defendants. Its position is stated in these words:

"We do not claim that the Tennessee business was not conducted in the name of the Needles Mining & Smelting Company, but we do assert that that company was not the real party in interest; that it was a subsidiary and agent of the defendants; that it was directed and controlled in the operation of the Tennessee mine by these defendant companies, and that it had no independent will of its own, and that the wrongs committed during the operation of the Tennessee property were under the direction of defendants, the 'parent organizations.' "

The evidence to support the assertion that the Needles Company operated the mines as a subsidiary and agent of defendants, that it was directed and controlled by defendants, that it had no independent will of its own, and that it was not the real party in interest, is more attenuated, if possible, than that offered in support of plaintiff's contention that Anderson in executing optional contract was acting as the agent of defendants. The only possible clue in the evidence to such a conclusion is that Anderson, who was the consulting engineer of the Needles Company from its organization until 1914 and thereafter its general manager, was also Pacific Coast manager of the Exploration Company, or, as one witness (the plaintiff's president) expressed it, the field manager of defendants in charge of their principal business. The fact that Anderson was an official of the Needles Company and also of both the defendants would not of itself be any evidence whatever that the contract entered into by him personally with plaintiff was

the joint contract of the defendants, or that he was acting as the agent of defendants in securing contract, or that he or the Needles Company was their agent or agents in operating the mines or in paying the royalties. As was said by this court in *Franklin* v. *Havalena Mining Co.*, 18 Ariz. 201, 157 Pac. 986, quoting from *Browning* v. *Hinkle*, 48 Minn. 544, 31 Am. St. Rep. 691, 51 N. W. 605:

"The mere fact that one is a director, president, secretary or other officer of a corporation does not make all his acts or declarations, even though relating to the affairs of the corporation, binding upon the latter. Such persons are mere agents, and their declarations are binding upon the corporation only when made in the course of the performance of their authorized duties as agents, so that the declarations constitute a part of their conduct as agents—a part of the *res gestae.*"

It appears that during all this time Anderson was an officer in three or four other companies, all of which, as their names would indicate, were engaged in mining. They were: Gold Road Mines Company, Mammoth Copper Mining Company and Rainbow Mining Company. If Anderson in some of his letters had used the letter-heads of one of these companies, the claim might just as reasonably have been set up that it was a party to the contract and to the alleged conversion, as to claim the defendants were parties. In *Brutinel* v. *Nygren*, 17 Ariz. 491, L. R. A. 1915F, 713, 154 Pac. 1042, the question was not whether Dunn was the agent of the defendant, but the extent of the agency. In discussing that question the important rule, which we understand to be the general one, was thus stated:

"The mere fact that one is dealing with an agent, whether the agency be general or special, should be a danger signal, and, like a railroad crossing, suggests the duty to 'stop, look and listen,' and if he would bind the principal is bound to ascertain, not

only the fact of agency, but the nature and extent of the authority, and in case either is controverted the burden of proof is upon him to establish it.''

The defendants and the Needles Company were distinct entities. Each had its own charter. There is no showing whatever that their stockholders were the same either in whole or in part, or that they had a common directorate, or that any director of one was also a director of the other. There is the bare statement by a witness for plaintiff that the defendant companies were the parent companies, or that one of them was such, and the Needles Company a subsidiary. Whether it was meant by this that the Exploration Company, or the Mining Company, or both of them, were the holding companies, and the Needles Company was organized to operate the Tennessee Group, we have no way of knowing. But, if that be the meaning, still they would be separate and distinct corporations, to be treated as such ''unless,'' as is said in *Martin* v. *Development Co. of America,* 240 Fed. 42, 45, 153 C. C. A. 78, 81, ''facts are averred which show that such separate corporate existence is a mere sham, or has been used as an instrument for concealing the truth, or where the organization and control are shown to be such as that it is but an instrumentality or adjunct of another corporation.'' See, also, *Pittsburg & Buffalo Co.* v. *Duncan,* 232 Fed. 585, 46 C. C. A. 542; *Commonwealth* v. *Muir,* 170 Ky. 435, 186 S. W. 194. Plaintiff does not try to meet this proposition either by averment or proof. It nowhere appears that the Needles Company was a sham corporation organized to conceal the truth or hide the real facts of the situation. Its organization and subsequent operations were open and aboveboard.

The plaintiff's attitude, as manifested in brief and argument, is that it succeeded in getting a jury's

verdict in the trial court, and that such verdict ought not to be disturbed; the contention being that the verdict is binding upon the court. We grant the rule and its binding effect when there are two sides to the evidence and the only question is which way the scales tip; but where there is but one side, where the evidence in all material ways points the same direction and the question is not its truth or weight, but its effect, then clearly the jury's verdict is not binding upon the court.

The conclusion in the *Brutinel* v. *Nygren* case, *supra,* seems so appropriate to the facts in this case that we adopt it. We there said:

"To sustain the judgment in this case it would be necessary to hold that the jury in arriving at their verdict have a legal right, in the absence of any evidence in regard thereto, to conjecture and assume necessary and controlling facts, which, under the law, is beyond the province of a jury. The plaintiff may have a valid claim for remuneration. If he has, the wrong defendant has been selected to pay it."

The judgment of the lower court is reversed and the cause remanded, with the direction that complaint be dismissed.

McALISTER, C. J., and LYMAN, J., concur.