## In re AMERICAN RANGE & FOUNDRY CO.

(District Court, D. Minnesota, Third Division. March 23, 1926.)

**1. Principal and agent ⟝85—Agent is entitled to reasonable advances and disbursements within scope of agency, but not if they violate instructions or exceed authority, unless ratified by principal.**

Agent is entitled to reimbursement for reasonable advances, expenses, and disbursements incurred within scope of his agency for principal's benefit, but not if they are made in excess of authority or in violation of instructions, unless ratified by principal.

**2. Corporations ⟝79—Corporation's fiscal agent held without implied authority to agree to reimburse purchasers of stock if they were not satisfied or dividends were not paid, and not entitled to reimbursement for loss therefrom.**

Corporation's fiscal agent, which sold stock on commission, did not have implied authority to agree to reimburse purchasers if they were not satisfied or dividends were not paid, and was not entitled to reimbursement for moneys paid out in reimbursing purchasers because it relied on representations of corporation's officers as to their management of corporation.

**3. Corporations ⟝406(1).**

No other officer or agent except board of directors can modify corporate contract unless authorized by directors.

**4. Corporations ⟝422(1).**

Declarations of corporation's officers, not connected with performance of their authorized duties, are not binding on corporation.

**5. Corporations ⟝407(2)—Corporation's by-law, authorizing president to make contracts, held not to give him implied authority to modify definite fiscal agency contract ratified by directors.**

By-law of corporation, authorizing president to make contracts, referred to corporation's ordinary business transactions, and did not give him implied authority to modify, by representations and declarations, definite fiscal agency contract ratified by directors.

**6. Corporations ⟝407(2)—Modification of fiscal agency contract by corporate principal's president, providing for reimbursing agent for loss, held without consideration and not binding on corporation.**

Where definite fiscal agency contract required agent to use its best efforts to sell stock on commission, *held* that, even if president of corporation was authorized to modify agreement by agreeing to indemnify agent against loss on agent's agreements to reimburse purchasers, such modification was not supported by any new consideration and was not binding on corporation.

In Bankruptcy. In the matter of the American Range & Foundry Company, bankrupt. On petition of the W. B. Foshay Company, claimant, to review an order of the referee adverse to claimant. Report of referee confirmed.

See, also, 14 F.(2d) ——.

H. E. Fryberger and Donald E. Bridgman, both of Minneapolis, Minn., for claimant.

Samuel A. Mitchell, of St. Louis, Mo., and Todd, Fosnes & Sterling, of St. Paul, Minn., for trustee.

JOHN B. SANBORN, District Judge. The claimant in its proof of claim states:

That in June, 1921, the bankrupt was engaged in the manufacturing business at Shakopee, Minn. That the claimant for eight years has been an investment banker. That shortly prior to June 20, 1921, the bankrupt represented that it was sound, was earning large profits, had been operating for thirty years, and that its management was careful, conservative, and economical; that it desired to enlarge its business and to employ claimant as its fiscal agent in selling its "special stock" to obtain funds for that purpose.

That, in reliance upon such representations, claimant on June 20, 1921, entered into a written agreement with the bankrupt to act as its fiscal agent in the sale of such stock and to take 10 per cent. of the amount realized from the sale as its compensation.

That from June, 1921, to June, 1924, the claimant sold stock, and during that time the bankrupt continued to represent that its business was being carefully, prudently, conservatively, and economically managed, and that it was earning large profits. That the claimant, in reliance upon such statements, represented to and agreed with the purchasers of the special stock that, if the stock should prove unsatisfactory or if the bankrupt should fail to pay dividends or should become financially embarrassed, the claimant would take over the stock and reimburse them to the extent of the purchase price. That the claimant sold 2,029 shares of special stock to various purchasers as such fiscal agent.

That in the month of July, 1924, the bankrupt became financially embarrassed and did not pay dividends, and that, under its agreement with purchasers of stock, the claimant paid or incurred the obligation to pay $238,616.30.

That the bankrupt knew at all times that the claimant was making the agreements it did make with purchasers to reimburse them, and continued to make the representations referred to, but refrained from making a full disclosure of its true condition, and thereby exposed the claimant to danger of the loss which occurred, and that the bankrupt negli-

gently and wrongfully caused and permitted the claimant to suffer this loss. That, when the claimant took over the stock from the purchasers, it was of no value.

That both before and after the fiscal agency agreement was signed, it was represented by the bankrupt, and it expressly and impliedly agreed that, as a part of the consideration for and an inducement to the claimant to enter into it, the bankrupt would at all times protect the claimant and its rights by continuing and maintaining the same careful, prudent, conservative, and economical management which had always been maintained. That the majority stockholders, George L. Nye, C. W. Nye, and Edward Campbell, agreed in writing that, while the stock was outstanding, they would retain a controlling interest in the common stock and retain the same management. That early in 1924 the bankrupt discharged Campbell, and that the majority stockholders failed to retain either the control or management of the bankrupt. That the proximate cause of the financial embarrassment of the bankrupt was the violation by it of the terms of its agreement as to management, and the avarice and greed of the Mercantile Trust Company of St. Louis, which conspired against the bankrupt for the purpose of appropriating its assets.

That not until July, 1924, did the claimant learn that a disclosure had not been made to it of the real facts concerning the condition or management of the bankrupt, that it had concealed from the claimant the fact that excessive salaries were being paid, and that too much money was being borrowed.

That, "by reason of the facts aforesaid, the bankrupt impliedly represented and agreed that it would reimburse claimant for all damages suffered by reason of the obligations entered into by claimant" in the highest good faith with the purchasers of stock.

That the various creditors of the foundry company had notice and knowledge of the issue of the special stock and of the terms and conditions under which it was being sold.

To state the claim briefly, it is that the claimant, by reason of representations made to and agreements made with it by the bankrupt, was induced to act as fiscal agent of the bankrupt in the sale of its special stock; that, with the knowledge of the bankrupt and of its creditors, the claimant agreed to reimburse purchasers in case the stock should be unsatisfactory to them; that the bankrupt subsequently misrepresented and concealed its true condition from the claimant, violated its agreement with it as to careful and conservative management, and, as a result, the claimant was obliged to and did reimburse the purchasers of stock, and for that reason is entitled to be reimbursed by the bankrupt.

On the trial before the referee, the claimant proved or offered to prove the following facts:

That on June 20, 1921, it entered into a fiscal agency contract with the bankrupt for the sale of the special stock. That at the same time the Nyes and Campbell, who owned the majority of the common stock, entered into an agreement with the fiscal agent, in consideration of the execution of the agency contract, that so long as any of the special stock remained outstanding they would retain the ownership of at least 51 per cent. of the common stock of the bankrupt; "it being our intention by this agreement to retain the present management of said American Range & Foundry Company, provided, however, that this agreement on our part may at any time be changed or abrogated with the consent in writing or by vote, at a meeting duly called for that purpose, of the holders of two-thirds in amount of the special stock then outstanding, and that we may thereby be relieved from our obligations hereunder." That in various conferences with the Nyes and Campbell, both before and after the execution of the agency contract, they stated to the claimant that it was their intention to maintain the same careful, prudent, conservative, and economical management which had theretofore existed, and that claimant told them, and they understood, that, in reliance upon that statement, it was selling this stock upon an agreement that it would protect the purchasers against loss by reimbursing them in case dividends were not paid or the company became insolvent.

That some two years after the agency contract was entered into the company made an additional loan of $250,000 from the Mercantile Trust Company of St. Louis, Mo., and executed a deed of trust to secure its payment. That it changed its business management, did not confine itself to the manufacturing business, but established five retail stores and greatly expanded its business. That this program of expansion was not known to the claimant until the summer of 1924, and was not consented to by it. That between June, 1921, and June, 1924, the claimant sold more than $200,000 worth of the special stock under its agreement, paying over the proceeds to the bankrupt, after retaining its 10 per cent. commission.

That the adjudication in bankruptcy occurred on the 27th day of October, 1924. That the special stock was at that time worth-

less, and that the claimant, by virtue of its agreement with the purchasers to protect them, took the stock off their hands and gave them notes or other securities of the value of what they had originally paid, in reimbursement.

The referee excluded most of the evidence offered by the claimant in support of the facts set forth in its claim, and, if the proof of claim states a cause of action, and if all the evidence offered would, if received, have established it, the order of the referee should be reversed.

The claimant takes the position that it is entitled to recover upon three grounds:

(1) That the claimant was a fiscal agent and is entitled to reimbursement for the moneys which it paid out in reimbursing the purchasers of stock.

(2) That the bankrupt subjected the claimant to risks and hazards which were never contemplated at the time the claimant was employed as fiscal agent, and that the proximate result of the risks and hazards created by the bankrupt was the loss which the claimant had suffered.

(3) That there was a breach of an implied contract between the bankrupt and the claimant, and that the damages suffered were the proximate result.

[1] Referring to the first ground, it is the law that an agent has the right to be reimbursed for all of his advances, expenses, and disbursements incurred in the course of the agency on account of or for the benefit of his principal, when such advances, expenses, and disbursements are reasonable and have been properly incurred and paid, without misconduct on the part of the agent. Bibb v. Allen, 149 U. S. 481, 13 S. Ct. 950, 37 L. Ed. 819; 2 C. J. 794. Such disbursements must be made, however, within the scope of the agent's authority, and, if money is paid out or a loss incurred with respect to a matter as to which the agent acted in excess of his authority or in violation of his instructions, he is not entitled to reimbursement unless the principal ratifies his acts. 2 C. J. 797.

[2] There is no allegation in the proof of claim, and there apparently was no evidence offered, that the claimant had authority from the bankrupt to make any agreement to reimburse the purchasers of the stock in case they were not satisfied or dividends were not paid, and no allegation or proof of any express agreement made by the bankrupt to reimburse the fiscal agent for any loss which it might sustain by reason of its making such an agreement with purchasers. Apparently the claim is not that the claimant made the agreement to reimburse purchasers on behalf of its principal or with its authority, but that it made it relying upon representations as to management made by officers of its principal, and that the principal received the benefits. In order to be entitled to reimbursement under the rule of law referred to, the claimant must allege and prove that the agreement was made within the scope of its authority and on behalf of its principal. It could not be said that the agent had implied authority to make such an agreement, or that it was incidental to the sale of the stock, because the agreement had the effect of changing the character of the stock sold and converting it into guaranteed special stock.

The claimant cites Guirney v. St. P., M. & M. Ry. Co., 43 Minn. 496, 46 N. W. 78, 19 Am. St. Rep. 256, in support of the second ground. In that case it appeared that an employee of the railway company violated an injunction which had been granted against his employer, and of which he had not been advised. The court lays down the rule that a master may not willfully expose his servant to danger of loss or injury in the course of his employment, the risk of which is known to him, but notice of which is wrongfully withheld from the servant. That rule also obviously applies to a servant or agent acting within the scope of his employment.

As to the third ground, the breach of the alleged agreement that the same careful and conservative management would be continued in the future as in the past, which would seem to be, under the circumstances, more of a prophecy of the Nyes than a definite promise by the bankrupt, there is this question to be answered: Could the corporation, after having made a definite fiscal agency agreement, ratified by its Board of Directors, thereafter, through representations made by its officers, without any further consideration, modify the agreement so as to make itself liable to reimburse the agent for such damages as it might suffer by reason of an agreement which it made with the purchasers of the stock?

[3] The general rule is that the power to modify a corporate contract is in the board of directors, and that no other officer or agent can make such modification, even though he has power to make the contract, unless authorized by the board of directors. 14 A. C. J. 426; Grant v. Duluth, Missabe & Northern Ry. Co., 66 Minn. 349, 69 N. W. 23; Illinois Trust v. Burlington, 79 Kan. 797, 101 P. 649; Lonkey v. Succor Mill Co., 10 Nev. 17.

[4] If the declarations of the officers of the bankrupt were not connected with the performance of their authorized duties, then they

were not binding upon the corporation. Browning v. Hinkle, 48 Minn. 544, 51 N. W. 605, 31 Am. St. Rep. 691; Whitney v. Wagener, 84 Minn. 211, 87 N. W. 602, 87 Am. St. Rep. 351; First State Bank of Storden v. Pedersen, 123 Minn. 374, 143 N. W. 980.

[5] The contract between the bankrupt and the claimant was made in the first instance by the president, and was subsequently ratified by the board of directors. The by-laws provide that the president may make and sign contracts, but that unquestionably refers to the ordinary transaction of the business of the company, and there would be no implied authority in the president to modify this contract by representations or declarations.

[6] However, if it should be held that the president did have authority not only to make, but to modify, this particular contract, there appears to be no consideration whatsoever for the modification.

"A modification of a contract being a new contract, a consideration is necessary to support the new agreement, as, for example, where it is to extend the time for performance or payment, or to release one of the parties from performance." 13 C. J. 592; Little v. Rees, 34 Minn. 277, 26 N. W. 7; King v. Duluth, Missabe & Northern Ry. Co., 61 Minn. 482, 63 N. W. 1105.

In the latter case it is said:

"It is entirely competent for the parties to a contract to modify it or waive their rights under it, and ingraft new terms upon it, and, in such a case, the promise of one party is the consideration for that of the other; but, where the promise to the one is simply a repetition of a subsisting legal promise, there can be no consideration for the promise of the other party, and there is no warrant for inferring that the parties have voluntarily rescinded or modified their contract."

Under the fiscal agency contract in this case, the claimant had agreed to use its best efforts to sell the special stock of the bankrupt for an agreed compensation. The alleged modification of this agreement, which it is claimed obligates the bankrupt to indemnify the claimant against the loss incurred, is supported by no new promise or other consideration. The claimant simply did what it already had agreed to do under the fiscal agency contract, except that it stepped outside, and, for the purpose of making the sale of the stock easier, entered into an agreement with the purchasers thereof which it was under no legal obligation to make.

I am satisfied that, if all the evidence offered by the claimant had been received, no claim would have been established against the bankrupt estate, and that the conclusion reached by the referee is correct.

The report of the referee is therefore in all things confirmed.